STATE of Wisconsin, Plaintiff-Respondent and Cross-Petitioner,

v.

Daniel L. TAPPA, Defendant-Appellant.

Supreme Court

*No. 84–131–CR. Argued October 28, 1985.—Decided December 19, 1985.*

(Also reported in 378 N.W.2d 883.)

156

For the plaintiff-respondent and cross-petitioner the cause was argued by *Christopher G. Wren,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the defendant-appellant there was a brief by *Challoner Morse McBride* and *McBride Law Offices,* Sturgeon Bay, and oral argument by *Ms. McBride.*

DAY, J. This is a review of a published decision of the court of appeals, *State v. Tappa,* 123 Wis. 2d 210, 365 N.W. 2d 913 (Ct. App. 1985), affirming in part and reversing in part a judgment of the circuit court for Oconto county, Honorable John M. Wiebusch, circuit judge. Daniel L. Tappa (Defendant) was convicted of three counts under the theft statute; one count of concealing stolen property and two counts of transferring such property. In addition, he was convicted of one count of possession of firearms by a convicted felon. (This conviction is not before us). The court of appeals affirmed the concealing and possession convictions, but reversed the two transferring convictions. The issue on review is: May a person be convicted of concealing movable property of another in violation of sec. 943.20(1)(a), Stats., 1981–1982,[1] and be separately

---

[1] Section 943.20, Stats. provides:

"**943.20 Theft.** (1) ACTS. Whoever does any of the following may be penalized as provided in sub. (3):

"(a) Intentionally takes and carries away, uses, transfers, conceals, or retains possession of movable property of another without his consent

convicted of transferring that property in violation of the same statute?

We hold that a person may be convicted under sec. 943.20(1)(a), Stats., for concealing the movable property of another and be separately convicted under the same statute for transferring (such as selling) that property. We reverse the decision of the court of appeals and reinstate the judgment of the circuit court.

The state's witnesses testified that on the evening of December 17, 1982, the Defendant and Brad LaCombe (LaCombe) met Levi Stone (Stone) at an Oconto business establishment. Following the meeting, all three men drove to the Defendant's home in his blue Thunderbird automobile. Defendant instructed LaCombe and Stone to drive a maroon Oldsmobile to Charles Beumia's (Beumia) home to "get" some guns. Beumia was not at home. LaCombe and Stone went to Beumia's home, entered, took approximately thirteen guns, placed them in the trunk of the car, and returned to the Defendant's home, where they parked the car. Beumia did not give anyone permission to take these guns.

Around noon on December 19, 1982, LaCombe returned to the Defendant's home. Afterwards, Gary Schmit (Schmit) arrived at the Defendant's home. While all three men were present, LaCombe showed Schmit the guns in the Oldsmobile's trunk. During the transaction, an Oconto Police Department squad car cruised past the Defendant's home. After the squad car disappeared, the Defendant instructed LaCombe to remove the guns from the trunk and hide them in a nearby woods. After the guns were concealed, Schmit purchased two of them. Schmit was informed by both the Defendant and LaCombe that the guns were "warm." Schmit testified that "warm" meant stolen.

---

and with intent to deprive the owner permanently of possession of such property."

Later in the afternoon of December 19, 1982, the Defendant and LaCombe encountered Rick Boucher (Boucher) in downtown Oconto. They discussed the guns and Boucher agreed to purchase one of them after the Defendant had told him that they were "a little warm." Lacombe delivered the gun to Boucher later that day.

In the evening of December 19, 1982, the Defendant and LaCombe decided to move the guns. They placed the guns in the trunk of the Defendant's Thunderbird, and drove to the home of Mickey Young (Young), the Defendant's grandfather. Defendant instructed LaCombe to hide the guns in a shed behind Young's home, while he distracted his grandfather.

Defendant denied involvement in the concealment and the two transfers.

On December 21, 1982, the police recovered the guns from Young's shed. Defendant was arrested and the state originally filed a thirteen count information against him: one count of unlawfully concealing property, two counts of unlawfully transferring the same property and ten counts (one count for each stolen gun) of possession of a firearm by a person previously convicted of a felony.[2] Defendant's motion to dismiss on the grounds that the information overcharged and therefore violated restrictions on multiplicitous charging was denied, but his motion to consolidate the possession charges was granted by the circuit court. Subsequently, the state filed an amended information alleging the following four counts: Count One: On or about December 17, 1982, intentionally concealing movable property of another without the owner's consent and with the intent to permanently deprive the owner of

---

[2] Both Stone and LaCombe testified that they took approximately thirteen guns. Only ten guns were recovered by the police: the seven guns from the Young residence, the two guns sold to Schmit and the gun sold to Boucher. These ten guns were the basis of the action against the Defendant.

such property; Count Two: Intentionally transferring movable property of another, without the owner's consent and with the intent to permanently deprive the owner of such property (the sale of two guns to Schmit); Count Three: Intentionally transferring movable property of another, without the owner's consent and with the intent to permanently deprive the owner of such property (the sale of one gun to Boucher); Count Four: Possession of firearms by a felon.

Defendant's pretrial motion to dismiss counts one, two and three of the amended information on grounds of improper multiplication of charges was denied by the circuit court. The jury found the Defendant guilty of all four counts, and the court sentenced the Defendant to four years on each count, with the terms to run concurrently. Defendant's postconviction motion, realleging the multiplicitous claim, was denied.

Defendant appealed his conviction and the court of appeals affirmed the concealing and possession convictions, but reversed both transferring convictions. The court of appeals held the theft statute to be ambiguous contending that it could not determine the intended unit of prosecution from the statutory language. Applying a "common sense" approach, the appeals court held that the theft statute contemplates only one conviction for theft.

Defendant petitioned this court for review alleging that the evidence did not support the jury's verdict and that a mistrial should have been granted based on improper statements made by the prosecutor during his closing argument. Review was denied. The state cross-petitioned, alleging that the court of appeals erred in reversing the transferring convictions and the cross-petition was granted.

The question posed by this case is whether a defendant may be charged separately under sec. 943.20(1)(a), Stats., for concealing and transferring the same property. Section 939.22(40), defines transfer as "any transaction in-

volving a change in possession of any property, or a change of right, title, or interest to or in any property." It is the Defendant's position that he has been charged with and convicted on three separate counts for conduct which actually constituted a single offense under sec. 943.20(1)(a). This raises the problem of multiplicity. The court of appeals did not address the multiplicity issue because it applied the rules of statutory construction to determine the intended unit of prosecution under sec. 943.20(1)(a). The court stated that "we consider legislative intent to be a separate question, unrelated to the constitutionally implicated multiplicity rule." *Tappa,* 123 Wis. 2d at 214, n. 1. We conclude that it was erroneous not to apply the two-element test of *Rabe* to this case. This case presents a problem of multiplicity.

■■ Multiplicity is the charging of a single offense in separate counts. *State v. Rabe,* 96 Wis. 2d 48, 61, 291 N.W. 2d 809 (1980). Multiplicitous charging is impermissible because it violates the double jeopardy provision of the Wisconsin and United States Constitutions. Article I, sec. 8 of the Wisconsin Constitution provides that "no person for the *same offense* may be put twice in jeopardy of punishment. . . ." (Emphasis added.) The fifth amendment to the United States Constitution provides "nor shall any person be subject for the *same offence* to be twice put in jeopardy of life or limb. . . ." (Emphasis added.)[3] Because of the similarity of these provisions, this Court has accepted, when applicable, decisions of the United States Supreme Court as controlling the double jeopardy provisions of both Constitutions. *Rabe,* 96 Wis. 2d at 61, n. 7; *Austin v. State,* 86 Wis. 2d 213, 224, 271 N.W. 2d 668

---

[3] The double jeopardy provision of the fifth amendment was made applicable to the states through the fourteenth amendment. *Benton v. Maryland,* 395 U.S. 784 (1969).

(1978); *Harrell v. State,* 88 Wis. 2d 546, 554, 277 N.W. 2d 462 (Ct. App. 1979).

The United States Supreme Court has described three interests that are protected by the double jeopardy provision: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. *And it protects against multiple punishments for the same offense." United States v. Wilson,* 420 U.S. 332, 343 (1975). (Emphasis added.) The question here is did the concealing charge and each transferring charge constitute separate offenses.

It is the state's contention that the transfer of the stolen guns was a significantly different act than the concealment of those guns. It supports this allegation with the following features associated with transfer but not concealment: transfer involves a third-party; transfer disperses the loot, making it harder for an owner to recover his property; transfer increases the possible harm to society from the use of the guns; and transfer is a separate, volitional act. In response, the Defendant argues that there was "one booty," one continuous offense. The Defendant argues that the transfers and concealment of the same guns taken from a single source as a single unit should be treated as one offense.

In *Rabe,* this court described a two element test utilized by Wisconsin courts in evaluating whether a charge is multiplicitous. The first element inquires whether the severed offenses are "identical in law and fact," and the second element inquires into "the legislative intent as to the allowable unit of prosecution under the statute in question." *Rabe,* 96 Wis. 2d at 63. The first element concerns the issue of double jeopardy. We conclude that the severed offenses are identical in law but not in fact. In *State v. Van Meter,* 72 Wis. 2d 754, 758, 242 N.W. 2d 206 (1976), this court held that "[b]ecause defendant has been

162

convicted of two violations of the same statute, identity of legal elements is shown." In *Van Meter,* the defendant was convicted of two counts of fleeing from an officer contrary to sec. 346.04(3), Stats. Analagous to the case before us is the case of *State v. Eisch,* 96 Wis. 2d 25, 291 N.W. 2d 800 (1980) in which the defendant was charged with four counts of sexual assault against the same victim. In *Eisch,* sexual intercourse was accomplished by four separate bodily intrusions defined in sec. 940.225(5)(c), Stats., 1977–1978.[4] This court concluded that the four charges were identical in law "in the sense that each would constitute a legal predicate for prosecution under the statute." *Eisch,* 96 Wis. 2d at 31. In the present case, the Defendant was charged with three acts of theft defined in sec. 943.20(1)(a), and each act would constitute a legal predicate for prosecution under the statute.

Wisconsin courts use the "additional fact" test to determine whether the offenses are identical in fact. *State v. Mosley,* 102 Wis. 2d 636, 644, 307 N.W. 2d 200 (1981); *Blenski v. State,* 73 Wis. 2d 685, 693–694, 245 N.W. 2d 906 (1976). This test examines "whether each count requires proof of an additional fact which the other count or counts do not." *Rabe,* 96 Wis. 2d at 63; *Harrell,* 88 Wis. 2d at 556. .

---

[4] Section 940.225(5)(c), Stats., provides:
**"940.225 Sexual Assault. . . .**

"(c) 'Sexual intercourse' includes the meaning assigned under s. 939.22(36) as well as cunnilingus, fellatio, anal intercourse or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal opening of another, but emission of semen is not required."

Section 939.22(36), Stats., provides:

**"939.22 Words and phrases defined.** In the criminal code, the following words and phrases have the designated meanings unless the context of a specific section manifestly requires a different construction. . . .

"(36) 'Sexual intercourse' requires only vulvar penetration and does not require emission."

The state argues that a conviction under each count required proof of different facts. It argues that the transfer charges required proof of the identity of each recipient and the circumstances of each transfer, whereas the concealment charge required proof of the place of concealment. In response, the Defendant alleges that the counts are identical in fact, because the transfers and concealment involved a single ongoing transaction. We agree with the state and conclude that each count required proof of additional facts which the other counts did not. We conclude that the multiple counts are not violative of double jeopardy.

Even though the charging of multiple counts is not violative of double jeopardy, it may still be multiplicitous if the legislative intent shows that the allowable unit of prosecution is one count. Applying the legislative intent test, we conclude that it was within the discretion of the state to charge the Defendant with three separate counts of theft.

The state relies on this court's decision of *State v. Genova*, 77 Wis. 2d 141, 252 N.W. 2d 380 (1977) for the conclusion that sec. 943.20(1)(a), Stats., is to be read in the disjunctive. Based on this conclusion, the state asserts that each act under sec. 943.20(1)(a), constitutes a completed crime. Furthermore, the state argues that the charges were not improperly multiplied because the legislature did not intend the distinctions between the acts to be "useless" nor that it intended to preclude separate charges. The Defendant argues that the intent of the legislature was to proscribe the exercise of unauthorized control over the property of another. The Defendant argues that since there was "one booty" there can only be one exercise of unauthorized control. Furthermore, argues the Defendant, when a statute is ambiguous as to the unit of prosecution such ambiguity should be interpreted in favor of the Defendant.

164

In *Manson v. State,* 101 Wis. 2d 413, 422, 304 N.W. 2d 729 (1981), this court deemed the following four factors as being relevant to the determination of legislative intent: "(1) the language of the statute; (2) the legislative history and context of the statute; (3) the nature of the proscribed conduct; and (4) the appropriateness of multiple punishment for the conduct."[5]

The introductory clause to the theft statute provides that "[w]hoever does any of the following may be penalized." This supports the conclusion that any of the following acts will be a separate violation of the theft statute.

Section 943.20, Stats., is the result of the legislature's consolidation of numerous statutes that once constituted Wisconsin's law against misappropriation. Baldwin, *Criminal Misappropriation in Wisconsin—Part I,* 44 Marq. L. Rev. 253 (1961). Prior to the legislature's adoption of sec. 943.20, in 1955, two prior versions included the language of intentionally appropriating the property of another. Appropriation was defined as the exercising of "dominion over the property in a manner inconsistent with the rights of the owner. . . ." *Genova,* 77 Wis. 2d at 146–147; Melli and Remington, *Theft—A Comparative Analysis of the Present Law and the Proposed Criminal Code,* 1954 Wis. L. Rev. 253, 268. The Defendant in this case argues that since there is one booty, taken from one owner, that there can only be one exercise of unauthorized control. This court was confronted with this argument by the defendant in *Genova,* and held:

> "While the defendant's contention that 'once the property is stolen from the owner, it cannot be stolen from him again,' may be true as an observable fact, it does

---

[5] In *Manson,* this court was confronted with a unanimous verdict question. Before considering the Defendant's contention that he was deprived of a unanimous verdict, this court determined whether the armed robbery statute, sec. 943.32(1), Stats., defined one or two offenses.

not speak to the reach of sec. 943.20(1)(a), Stats., and the kinds of conduct which this section is intended to encompass. We cannot be misled because sec. 943.20 is captioned 'Theft.' The language of the section does not use the term theft. . . .Sec. 943.20(1)(a) describes a series of acts made criminal thereunder, one or more of which, but not all of which, constituted theft under common law. The statute covers more than 'stealing from the owner' as the legislative history clearly shows." *Genova,* 77 Wis. 2d at 145–146. (Footnotes omitted.)[6]

Under the 1953 statutes, concealment or aiding in the concealment of stolen money, goods or property of another was separately punishable under sec. 343.19, Stats.[7] A person charged with concealment was subject to the same punishment as a person charged with stealing the same property. Also, the unauthorized use of gas and electricity, now covered by sec. 943.20(1)(a), was punishable as a separate offense under sec. 343.175(1)(a).[8] Further-

---

[6] *See, Genova,* 77 Wis. 2d at 145–152 for a thorough analysis of the legislative intent for sec. 943.20(1)(a).

[7] Section 343.19 provides:

**"343.19 Receiving stolen property.** Any person who shall buy, receive, conceal or aid in the concealment of stolen money, goods or property, knowing the same to have been stolen, shall receive the same punishment as is hereinbefore provided for the stealing of such money, goods or property; and in any prosecution for such offense it shall not be necessary to aver or prove that the person who stole the same has been convicted."

[8] Section 343.175 provides:

**"343.175 Fraudulent use of gas, electricity, water and steam.** (1) Any person who wilfully, with intent to injure or defraud:

"(a) Connects a tube, pipe, wire or other instrument or contrivance with a pipe or wire used for the conducting or supplying illuminating gas, fuel, natural gas, water or electricity in such a manner as to supply such gas, water or electricity to any burner, orifice, lamp, fixture, appliance or motor where the same is or can be burned or used without passing through the meter or instrument provided for registering the quantity

more, sec. 343.51, implies that the taking, carrying away or converting to one's own use and the sale or disposition of logs without the consent of the owner are separate offenses. Section 343.51(1) and (2) provides in part:

"**343.51 Larceny of logs; evidence; damages; right of search.** (1) *Every person who shall wilfully take, carry away or otherwise convert to his own use, or sell or dispose of, without the consent of the owner, any log or cant* suitable to be worked into plank, board, joist, shingles or other lumber, such log or cant being the property of another, whether the owner thereof be known or unknown, and lying and being in any river in or bordering on this state, or in any tributary thereof, or in or on any slough, ravine, island, bottoms or land adjoining any such river or tributary thereof, *such log or cant being so taken, carried away or otherwise converted, sold or disposed of within this state or therein taken possession of with intent to sell or dispose of as aforesaid, shall be punished. . . .*
"(2) *Every person guilty of either of such offenses shall,* whether convicted thereof in a criminal prosecution or not, be liable to pay the owner of such log, cant or other lumber, respecting which the offense was committed, double the value of the same, to be recovered in an action ...." (Emphasis added.)

The language in sec. 343.51(2), of *"either* of such offenses" supports the conclusion that sec. 343.51, covers two offenses: the taking, carrying away or otherwise converting to one's own use, and the sale of or disposition of logs or cants. While sec. 943.20(1)(a), has consolidated these various statutes, it has retained the distinctions between taking and carrying away, using, transferring, concealing and possessing.

After considering the legislative history, this court in *Genova,* held that sec. 943.20(1)(a), Stats., is to be read

---

consumed; or uses such gas, water or electricity obtained by reason of the making of such connection."

as five disjunctive acts. *Genova,* 77 Wis. 2d at 145. Subsequently, in *Jackson v. State,* 92 Wis. 2d 1, 6, 284 N.W. 2d 685 (Ct. App. 1979), the defendant alleged that he was denied his right to a unanimous verdict because the jury was instructed that they could find him guilty of theft if they found "he either intentionally took and carried away or used or transferred or concealed or retained possession of movable property of another without lawful authority." The court of appeals held that if a complaint charges in the disjunctive and the terms are not synonymous, then the complaint is defective. Such a complaint allows the jury to find the defendant guilty without the state proving all the elements of the crime beyond a reasonable doubt. *Jackson,* 92 Wis. 2d at 11. The *Jackson* decision does not stand for the proposition that the state must plead only one of the five elements of the theft statute. *Jackson* requires each count in an information or complaint to allege only one of the elements of the theft statute if a disjunctive charge would use non-synonymous terms. Each of the disjunctive terms describes a separate type of "theft" or property deprivation. It in no way limits the number of separate charges that the prosecution may file.

Section 943.20(1)(a), Stats., is located within the group of crimes subtitled "Misappropriation." In *Manson,* this court stated that placing robbery in this group supports the view that the legislature intended to create one offense against property. *Manson,* 101 Wis. 2d at 426. However, as to theft, this court concluded in *Genova* the theft is intended to cover more than just the "stealing from the owner."

Next, we consider the proscribed conduct to determine if the statutory alternatives are similar or significantly different. *Manson,* 101 Wis. 2d at 426. This case presents the issue of whether transfer and concealment

are significantly different to justify charging them as separate offenses.

> "A defendant ought not be charged, tried, or convicted for offenses that are substantially alike when they are a part of the same general transaction or episode. . . .

> "Accordingly, the appropriate question is whether these acts allegedly committed . . . are so significantly different in fact that they may properly be denominated separate crimes although each would furnish a factual underpinning or a substitute legal element for the violation of the same statute." *Eisch,* 96 Wis. 2d at 34.

We conclude that transfer and concealment are significantly different acts. Concealing only requires the actual hiding of the property, whereas transferring requires the involvement of a third-party and a change in the possession of such property. A transfer involves a separate volitional act. It is not incidental to the concealment. It involves seeking out a third-party and arranging the terms of the transfer. This is significantly different than the mere concealment of stolen property. In *Mularkey v. State,* 199 Wis. 269, 225 N.W. 933 (1929), the defendant was convicted on two counts, one for possession of a privately distilled intoxicating liquor, and the second for transporting the same liquor in violation of the Prohibition Act. In reversing the possession conviction, this court held:

> "It is true that one may be found guilty of unlawful possession of intoxicating liquor and he may be found guilty of unlawfully transporting the same liquor and he may be found guilty of unlawful sale of the identical liquor. In this case, however, there is no evidence of possession other than such as was strictly incident to its transportation. One cannot transport liquor without for that purpose having possession of it. If he has a possession not incident to the transportation he is

169

guilty of two distinct offenses, but if, as in this case, there is no evidence of possession except such as was strictly and necessarily incident to its transportation, it is considered that he is guilty of one and not of two offenses." *Mularkey,* 199 Wis. at 272–273.

Furthermore, the transfer of property causes harm to the owner in a way that concealing does not. By transferring the guns, the Defendant dispersed the loot, which increased the owner's harm by making recovery potentially more difficult.

■
The final factor to be considered is the appropriateness of multiple punishment. Whether multiple punishment is appropriate depends on whether transfer and concealment are:

"[S]o significantly different that the conduct satisfying each of these criteria may be characterized as separate crimes although each would furnish a factual premise for the violation of the same statute; whether the acts are so close in time that they are to be treated as one; whether each act invades a different interest of the victim which the statutes intend to protect." *Manson,* 101 Wis. 2d at 427–428.

We conclude that it is appropriate to punish the Defendant separately for the transfers and the concealment because they are separate volitional acts. There was ample time for the Defendant to reflect on his actions and recommit himself to the criminal enterprise.

■
We hold that a common sense reading of the statute supports the conclusion that transfer and concealment are separate offenses. The Defendant argues that if there is any ambiguity in the statute, then the statute should be interpreted in his favor. In Wisconsin, "penal statutes are generally construed strictly to safeguard a defendant's rights." *Austin,* 86 Wis. 2d at 223. However, "the rule

of strict construction is not violated by taking the common-sense view of the statute as a whole and giving effect to the object of the legislature, if a reasonable construction of the words permits it." *Austin,* 86 Wis. 2d at 223 (quoting *Zarnott v. Timken-Detroit Axle Co.,* 244 Wis. 506, 600, 13 N.W. 2d 53 (1944)). The theft statute covers more than the mere taking of the property of another, it extends to the concealing, using and transferring of this property. *Genova,* 77 Wis. 2d at 146. The right of the state to allege multiple charges is subject to prosecutorial charging discretion and to judicial discretion in sentencing. *Rabe,* 96 Wis. 2d at 76.

*By the Court.*—The decision of the court of appeals is reversed and the decision of the circuit court is reinstated.

SHIRLEY S. ABRAHAMSON, J. *(dissenting).* The issue posed in this case is whether sec. 943.20(1)(a) sets forth several offenses or one offense.[1] The majority holds that the defendant was properly convicted of three counts

---

[1] Sec. 943.20(1), Stats. 1983–84, provides as follows:

"**943.20 Theft** (1) ACTS. Whoever does any of the following may be penalized as provided in sub. (3):

"(a) Intentionally takes and carries away, uses, transfers, conceals, or retains possession of movable property of another without his consent and with intent to deprive the owner permanently of possession of such property.

"(b) By virtue of his office ... having possession or custody of money ... intentionally uses, transfers, conceals, or retains possession of such money....

"(c) Having a legal interest in movable property, intentionally and without consent, takes such property out of the possession of a pledgee....

"(d) Obtains title to property of another by intentionally deceiving him with a false representation....

"(e) Intentionally fails to return any personal property which is in his possession or under his control by virtue of a written lease...."

of theft: (1) concealing weapons; (2) transferring two of the weapons to one buyer; and (3) transferring one of the weapons to another buyer. I dissent. I agree with the court of appeals that the defendant should be found guilty of only one count of theft.

In holding that the state may convict the defendant of three crimes, the majority apparently has determined that each verb set forth in the disjunctive in sec. 943.20(1)(a) establishes a separate crime instead of setting forth several ways of committing one crime.[2]

Under the majority opinion, a person who takes two radios from a shop without paying for them, without the owner's consent and with the intent to keep them, conceals the radios under his coat and then in the trunk of his car, retains possession of the radios using them in his home, and then sells each radio to a different buyer may be found guilty of at least six separate crimes: taking and carrying away; concealing; retaining; using; transferring one radio; and transferring the other radio. Because I can find no legislative basis for this result, and because it violates common sense, I dissent.

This case raises the question of multiplicity—the impermissible charging of one offense in several counts. The precise question here is whether the disjunctive verbs should be interpreted as setting forth several separate offenses or several ways of committing one offense. If the statute sets forth several offenses, then charging several counts under sec. 943.20(1)(a) is not multiplicitous; if, on the other hand, the statute sets forth one offense and lists ways that the offense can be committed, then charging

---

[2] In *State v. Genova,* 77 Wis. 2d 141, 252 N.W.2d 380 (1977), the issue was whether sec. 943.20(1)(a) should be read to require that a theft consists of first a taking from the owner and then an additional act of carrying away, using, transferring, concealing or retaining. The court held that the statute should be read as if "ors" appeared in the statute: takes and carries away, or uses, or transfers, or conceals, or retains. *Genova* did not raise or answer the question posed in this case.

multiple counts under sec. 943.20(1)(a) is prohibited as multiplicitous.

To determine whether a statute creates one offense or several offenses, we look to legislative intent.[3] The majority correctly acknowledges that the following factors are relevant in determining legislative intent: "(1) the language of the statute; (2) the legislative history and context of the statute; (3) the nature of the proscribed conduct; and (4) the appropriateness of multiple punishment for the conduct." *Manson v. State,* 101 Wis. 2d 413, 422, 304 N.W. 2d 729 (1981). See also *State v. Bohacheff,* 114 Wis. 2d 402, 410, 338 N.W. 2d 466 (1983).

The majority's analysis of these factors is unpersuasive. Looking at the language of the statute, the majority concludes that the introductory clause of sec. 943.20(1)(a) stating that "whoever does any of the following may be penalized" indicates that the legislature intended each of the verbs set out in sec. 943.20(1)(a) to set forth separate offenses. The statement that "whoever does any of the following may be penalized" is equally consistent with the defendant's argument that the statute sets forth alternative means of committing a single offense as it is with the majority's conclusion. If the language can be read to mean either "multiple offenses" or "a single offense," the string

---

[3] The majority discusses the issue of multiplicity in terms of the federal constitutional guaranty against double jeopardy and the *Rabe* analysis. See p. 161. This discussion is unnecessary. After *Rabe* the United States Supreme Court held that the dispositive issue in determining whether a court may impose multiple punishments on a defendant in a single trial for violating two statutory provisions (regardless of whether they constitute the same offense) is whether the legislature authorized multiple punishments. See *Missouri v. Hunter,* 459 U.S. 359, 368 (1983); *State v. Gordon,* 111 Wis. 2d 133, 330 N.W.2d 564 (1983); *State v. Bohacheff,* 114 Wis. 2d 402, 409, 338 N.W.2d 466 (1983). This development of the law was anticipated by this court in *State v. Rabe,* 96 Wis. 2d 48, 61–62, n. 7, 291 N.W. 2d 809 (1980). Consequently the only issue that need be discussed is the question of legislative intent.

173

of proscribed acts all within the same paragraph (a) supports the defendant's argument that the legislature intended one offense. In *Manson v. State, supra* 101 Wis. 2d at 422, we acknowledged that the legislature's use of separate paragraphs to proscribe two means of committing robbery seemed to indicate that two separate offenses were contemplated. Since the theft statute sets forth each alternative means in one sentence rather than in separate paragraphs, the inverse implication is applicable. It is reasonable to conclude from the statutory language that the legislature did not establish several crimes in sec. 943.20(1)(a) but merely several ways of committing one crime.

Recognizing that the statutory language is not plain but is ambiguous, the majority goes beyond the language to search for legislative intent in the legislative history. The majority asserts that the legislative history and context of the statute demonstrate that the legislature intended to provide multiple convictions for a larcenous transaction. It is not clear, however, how or why the history cited by the majority supports its conclusions.

The majority opinion explains that in 1955 the legislature consolidated more than 20 statutes relating to larceny in sec. 943.20(1)(a) to clarify and simplify the law of theft. It then refers to sec. 343.19, Stats. 1953, which proscribes concealment of stolen money and goods. Pp. 166–167. The majority does not explain why it refers to sec. 343.19. That section was not incorporated into sec. 943.20(1)(a), but became sec. 943.34, Stats. 1983–84, proscribing receipt of stolen property. See Wis. Legislative Council 1953 Report, vol. 5, sec. 343.29, p. 127. Theft and receipt of stolen property are separate crimes today, and the person who steals the property under sec. 943.20(1)(a) may not also be convicted of receiving it. See *State v. Godsey,* 272 Wis. 406, 75 N.W.2d 572 (1956); Baldwin, *Criminal Misappropriation in Wisconsin—Part II,* 44 Marq. L. Rev. 430, 452–53 (1961).

The majority refers next to sec. 343.175(1)(a), Stats. 1953, a statute punishing the unauthorized use of gas and electricity. P. 10. This statute was incorporated in sec. 943.20(1)(a), but the majority does not explain the significance of sec. 343.175(1)(a) to this case. Perhaps the majority is saying that before the 1955 revision a defendant could be convicted twice for the unauthorized use of gas and electricity, once under sec. 343.175(1)(a) and once under another larceny statute, and that after the 1955 statutory consolidation the state should be able to convict the defendant of several offenses. If this is the majority's point, it offers no evidence to support it. Indeed analysis of sec. 343.175(1)(a) indicates that this statute described conduct not necessarily falling within the other larceny statutes. See Baldwin, *Criminal Misappropriation in Wisconsin—Part I,* 44 Marq. L. Rev. 253, 261 and n. 23 (1960–61).

The majority's last reference is to sec. 343.51(2), Stats. 1953, which proscribed the theft of logs. P. 166. Sec. 343.51(2) became part of sec. 943.20(1)(a). Again it is not clear why the majority discusses this statute. I infer that the majority is trying to say that sec. 343.51 contemplated two offenses—(1) taking, carrying away and otherwise converting logs, and (2) the sale or the disposition of logs—and that after the 1955 statutory consolidation the state should be able to convict the defendant of two offenses, taking and selling.

The majority's reasoning rests on the phrase "either of such offenses" in sec. 343.51(2), quoted at p. 167. The majority states its version of the two offenses without any support. After studying the legislative history of the log law, which dates back to 1855, I conclude that the reference to two offenses was probably to theft of the logs and to altering log marks, an offense which at one time was a part of sec. 343.51(2) and was later made part of a different

175

section. See sec. 353.54, Stats. 1953. Theft of logs and altering log marks are still separate crimes.[4]

The legislative history recited by the majority does not support the majority's contention that the legislature intended multiple crimes. The legislative history shows that the legislature consolidated many larceny statutes into one statute. The legislature expanded the definition of property subject to theft in sec. 943.20(1)(a) and listed a series of verbs to describe the various ways of misappropriating property, including but not limited to the common law element of trespassory taking.[5] There is no evidence that prior to the 1955 revision multiple convictions were permissible under the several statutes that were combined into sec. 943.20(1)(a) . I conclude that the legislative history supports the conclusion that the legislature intended sec. 943.20(1)(a) to define one crime, namely misappropriating another person's property, and described several ways of accomplishing that crime.

The final two factors to be considered in determining whether sec. 943.20(1)(a) sets forth separate offenses is the nature of the proscribed conduct and the appropriateness of multiple punishment. As we said in *State v. Eisch,* 96 Wis. 2d 25, 34, 291 N.W.2d 800 (1980): "A defendant ought not be charged, tried, or convicted for offenses that are substantially alike when they are a part of the same general transaction or episode."

Although the acts proscribed under the statute may be viewed as distinctive, they are also substantially alike in that they all constitute the exercise of unauthorized

---

[4] See secs. 943.20(1)(a), 943.37, Stats. 1983–84; Wis. Legislative Council 1953 Report, vol. 5, sec. 343.31, pp. 129–130; ch. 263, Laws of 1864; ch. 257, Laws of 1878; ch. 295, Laws of 1880.

[5] See Wisconsin Legislative Council 1953 Report, vol. 5, pp. 113–115; 2 Model Penal Code, sec. 223.2, pp. 163–66 (1980); Model Penal Code, sec. 206.1, Comment 3, Tentative Draft 2, at 61–62 (1964); Baldwin, *Criminal Misappropriation in Wisconsin—Part I,* 44 Marq. L. Rev. 252–61 (1960–61).

176

control over another person's property. All the acts are part of the defendant's plan to appropriate property belonging to another. Multiple punishment is inappropriate because the acts appear to be parts of one continuous transaction. Furthermore each act invades the same interest of the victim—namely depriving the victim of the property. These factors point to the conclusion that multiple punishment is not appropriate under sec. 943.20(1)(a).

A final aid to interpreting sec. 943.20(1)(a) is the canon of construction that if there is ambiguity, a penal statute should be interpreted in favor of the defendant. *State v. Bohacheff, supra* 114 Wis. 2d at 417. In the absence of clear legislative intent to establish multiple punishment for each of the acts set forth in sec. 943.20(1)(a)— and the majority cannot point to any such clear legislative intent—the court should hold, as did the court of appeals, that only one conviction is appropriate in this case. This result is fair to the victim, society and the defendant. If the legislature wishes to impose a penalty on a thief for each exercise of unauthorized control over the property, the legislature should expressly state this objective.

For these reasons, I would affirm the decision of the court of appeals. Accordingly, I dissent.