STATE of Wisconsin, Plaintiff-Respondent,†

v.

Douglas SEYMOUR, Defendant-Appellant.

Court of Appeals

*No. 91–2962–CR. Submitted on briefs September 16, 1992.—Decided May 20, 1993.*

(Also reported in 502 N.W.2d 591.)

†Petition to review granted.

305

For the defendant-appellant the cause was submitted on the briefs of *John M. Brinckman* of *Brinckman & Brinckman, S.C.* of La Crosse and *Janet A. Jenkins* of *Johns & Flaherty, S.C.* of La Crosse.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Marguerite M. Moeller*, assistant attorney general.

Before Gartzke, P.J., Dykman and Sundby, JJ.

SUNDBY, J. Douglas Seymour was convicted of two counts of theft by an employee, in violation of sec. 943.20(1)(b), Stats. On each count the information charged Seymour in the conjunctive: "[B]y virtue of his employment . . . having possession or custody of money . . . [Seymour] intentionally used, transferred, *and* retained possession of such money without the owner's consent, contrary to his authority and with intent to convert to his own use or to the use of any other person except the owner . . . ." (Emphasis added.) However, the trial court instructed the jury in the disjunctive, instructing that it should find Seymour guilty if it was satisfied beyond a reasonable doubt that he intention-

ally used, transferred, concealed *or* retained possession of the money he was alleged to have stolen.

Seymour claims that by instructing the jury in the disjunctive without requiring that the jury unanimously agree which of the offenses he violated, the trial court deprived him of his right to a unanimous verdict and allowed the jury to find him guilty on evidence less than beyond a reasonable doubt. We agree.

The state does not concede that the jury verdict was "duplicitous," but does concede that if the trial court erred when it instructed the jury, the error was not harmless. We agree that the error was not harmless and therefore reverse Seymour's conviction and order a new trial. Our disposition of the appeal makes it unnecessary for us to consider Seymour's other claims.

Seymour and Paul Clower formed Clower Construction, Inc. Seymour was an employee. Seymour also formed a consulting service, Seymour Enterprises, which billed its services through Clower Construction. Clower and Seymour obtained a $25,000 line of credit at the corporation's bank. They opened four checking accounts, two in the name of Clower Construction and two in the name of Seymour Enterprises. Later, Seymour obtained a second $25,000 line of credit for Seymour Enterprises, which was occasionally used to supplement Clower Construction's cash flow.

The two counts of theft on which Seymour was convicted involved his use of Clower Construction's line of credit for Seymour Enterprises' purposes. At trial, Clower testified that only he had authority to use corporate funds for personal purposes. Seymour testified that both parties had that authority.

At the conclusion of the state's case, Seymour moved to dismiss the information on the grounds that

the evidence was insufficient to show that Seymour had "used" or "transferred" Clower Construction's money. The prosecutor argued that "[e]ven if you accept [Seymour's] argument as to the use and transfer option, we have charged retain[ed] possession as well, and so I certainly do not think that there is any ground on which to dismiss this case." The prosecutor also argued that the "transfer" of Clower Construction money was "hidden" "and the money never came back so we still have retention and possession." The trial court denied Seymour's motion to dismiss.

Thus, the state considered that the jury could find Seymour guilty if it was satisfied to the requisite degree of proof that Seymour *either* "used," "transferred" or "retained possession" of Clower Construction's money. Consistent with the state's position, in the jury instructions conference the prosecutor requested that the pattern theft instruction, Wis J I—Criminal 1444, be modified to include "transferred" and "retained possession." The pattern instruction would have instructed the jury as follows:

> If you are satisfied beyond a reasonable doubt from the evidence in this case that the defendant, by virtue of his employment, had possession of money belonging to another, that the defendant intentionally used such money without the owner's consent, contrary to his authority, and with intent to convert it to his own use, you should find the defendant guilty.

During the instruction conference, the trial court stated: "I don't think that it would be fatal if for example [the jury was] instructed in regard to use, transfer, *conceal* or retain." (Emphasis added.) Subsequently, the prosecutor asked the trial court: "Are all four alternatives going to be given—use, transfer, conceal, or

retain possession?" The trial court responded, "I think so . . . ." Over Seymour's objection, the trial court instructed the jury:

> If you are satisfied beyond a reasonable doubt from the evidence in this case that the defendant, by virtue of his employment, had possession of money belonging to another, that the defendant intentionally used, transferred, concealed *or* retained possession of such money without the owner's consent, contrary to his authority, and with intent to convert it to his own use, you should find the defendant guilty as to the count under consideration. [Emphasis added.][1]

Seymour attacks the jury verdict as "duplicitous." "Duplicity" is a term ordinarily applied to a charging document. "Duplicity is 'the joining in a single count of two or more distinct and separate offenses.'" *United States v. Brown*, 521 F. Supp. 511, 524 (W.D. Wis. 1981) (quoting 1 C. WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL 2D § 142, at 306 (1980)). *See also State v. George*, 69 Wis. 2d 92, 99, 230 N.W.2d 253, 257 (1975) (counts of complaint duplicitous if several transactions joined as single offense).

---

[1] As modified, the instruction actually given tracked sec. 943.20(1)(b), Stats., more closely than the pattern instruction. Section 943.20, Stats., provides in part:

(1) Whoever does any of the following may be penalized as provided in sub. (3):

. . . .

(b) By virtue of his office, business or employment, or as trustee or bailee, having possession or custody of money . . . *intentionally uses, transfers, conceals, or retains possession* of such money . . . without the owner's consent, contrary to his authority, and with intent to convert to his own use or to the use of any person except the owner. . . . [Emphasis added.]

In *Jackson v. State*, 92 Wis. 2d 1, 284 N.W.2d 685 (Ct. App. 1979), we held that a complaint charging theft under sec. 943.20(1)(a), Stats., would be duplicitous if it charged the defendant in the disjunctive by alleging that "he took and carried away *or* used *or* transferred, etc." *Id.* at 11, 284 N.W.2d at 689 (emphasis in original). Section 943.20(1)(a) penalizes a person who "[i]ntentionally takes and carries away, *uses, transfers, conceals, or retains possession* of movable property of another without his consent and with intent to deprive the owner permanently of possession of such property." (Emphasis added.) Because paragraph (1)(a) includes "uses," "transfers," "conceals" or "retains possession" as offenses, as does paragraph (1)(b), we conclude that decisions construing paragraph (1)(a) are persuasive in construing paragraph (1)(b).

Because the information charged Seymour in the conjunctive, it is not subject to objection as being duplicitous. Had the jury been charged in the conjunctive language of the information, there would have been no constitutional problem. "The general rule is that when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged." *Turner v. United States*, 396 U.S. 398, 420 (1970).

By charging in the conjunctive, the vices of duplicity are avoided:

> A duplicitous indictment is one that charges separate offenses in a single count. The overall vice of duplicity is that the jury cannot in a general verdict render its finding on each offense, making it difficult to determine whether a conviction rests on

only one of the offenses or on both. Adverse effects on a defendant may include improper notice of the charges against him, prejudice in the shaping of evidentiary rulings, in sentencing, in limiting review on appeal, in exposure to double jeopardy, and of course the danger that a conviction will result from a less than unanimous verdict as to each separate offense.

*United States v. Duncan*, 850 F.2d 1104, 1108 n.4 (6th Cir. 1988) (citing 1 C. WRIGHT, FEDERAL PRACTICE & PROCEDURE: CRIMINAL 2D § 142 (1982); 2 W. LAFAVE & J. ISRAEL, CRIMINAL PROCEDURE § 19.2(e) (1984)). In this case, the information advised Seymour that he was charged with using, transferring *and* retaining possession of stolen money. Thus, he had notice that he should be prepared to defend against the charge that he did all of those acts.

The information herein became duplicitous, however, when it was amended at the close of trial to substitute "or" for the word "and." In the verdict instructions conference, the trial court noted that the language of the statute was in the disjunctive, but the information was in the conjunctive. The trial court stated that the information should be stated in the disjunctive and the word "and" therein should be "or." The court said, "[I] will change the wording on the charges as far as the [i]nformation is concerned to make sure it adheres at this time to the—I'm concerned about using the term embezzlement, when the statute clearly defines it as theft."

Seymour was not prejudiced in his defense by the amendment of the information because it did not occur until after each party had presented its case to the jury. However, prejudice occurred when the jury was instructed that it could find Seymour guilty if the jury

was satisfied beyond a reasonable doubt that Seymour had used, *or* transferred, *or* concealed *or* retained possession of the money he was alleged to have stolen. At that point, one of the vices of duplicity manifested itself. "A general verdict of guilty will not reveal whether the jury found the defendant guilty of one crime and not guilty of the others, or guilty of all." 1 C. WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL 2D § 142, at 475 (1982).

In *Jackson*, we said that when there are alternative elements of the offense, and the defendant is charged with those alternative elements, the trial court must do one of the following to avoid the vice of duplicity. 92 Wis. 2d at 11, 284 N.W.2d at 690.[2] The court may require that the state elect which of the offenses it wishes to submit to the jury. "Alternatively, if more than one is submitted to the jury, the court must instruct the jury that before they may find the defendant guilty, they must unanimously agree on the alternative element they find was proven beyond a reasonable doubt." *Id.* Because alternative "elements" or separate offenses were submitted to the jury in this case, and the jury was not instructed that it must unanimously agree on the element or offense Seymour committed, the jury instructions were erroneous and violated Seymour's right to a unanimous jury verdict and to be proved guilty of an offense by evidence satisfying the beyond-a-reasonable-doubt standard.[3]

---

[2] It is more accurate to describe the alternative "elements" of the offense of theft as separate offenses. The cases frequently use "elements" of an offense to describe separate crimes which are given a common descriptive title, such as "theft."

[3] "Sections 5 and 7 of Article I, of the Wisconsin Constitution, guarantee the right to trial by jury. The decisions of this court have long assumed that this includes the right to a unani-

The state argues that we should place little reliance on *Jackson* because the case we relied on, *United States v. Gipson*, 553 F.2d 453 (5th Cir. 1977), was "disparaged" by the Court in *Schad v. Arizona*, 501 U.S. —, —, 115 L. Ed. 2d 555, 567 (1991). The dissent goes further than the state and asserts that *Schad* commands an entirely new approach to resolving issues of duplicity.

The defendant in *Schad* was charged with first-degree murder and, after his conviction was set aside, he was retried on theories of both premeditated murder and felony-murder. He argued that the sixth, eighth and fourteenth amendments required a unanimous jury in state capital cases, as distinct from those where lesser penalties are imposed. 115 L. Ed. 2d at 563-64. The plurality opinion said that this argument begged the question raised; defendant's real challenge was to Arizona's characterization of first-degree murder as a single crime. *Id.* at 564. The issue in *Schad*, the plurality said, was not one of jury unanimity, but the state's permissible limits in defining criminal conduct. *Id.* at 565. For this purpose, the plurality was not persuaded that *Gipson's* "distinct conceptual groupings" test answered the question of the permissible limits of crime definition. *Id.* at 567.

The plurality opinion pointed out that legislatures frequently enumerate alternative means of committing a crime without intending to state separate elements or separate crimes:

---

mous verdict." *Holland v. State*, 91 Wis. 2d 134, 138, 280 N.W.2d 288, 290 (1979), *cert. denied*, 445 U.S. 931 (1980) (citations omitted). The reasonable-doubt evidentiary standard is made applicable to the states by the due process clause of the fourteenth amendment. *In re Winship*, 397 U.S. 358, 363-64 (1970).

> The question whether statutory alternatives consti-
> tute independent elements of the offense therefore
> does not . . . call for a mere tautology; rather, it is a
> substantial question of statutory construction. . . .
>
> . . . .
>
> If a State's courts have determined that certain
> statutory alternatives are mere means of commit-
> ting a single offense, rather than independent
> elements of the crime, we simply are not at liberty
> to ignore that determination and conclude that the
> alternatives are, in fact, independent elements
> under state law.

*Id.* at 568 (citation omitted). Conversely, of course, if a state's courts have determined that certain statutory alternatives are independent offenses, the United States Supreme Court is not at liberty to ignore that determination and conclude that the alternatives are, in fact, mere means of committing a single offense. Wisconsin's appellate courts have determined that the statutory alternatives—use, transfer, conceal, or retain possession—are independent offenses.

The due process test which the dissent suggests replaces the jury-unanimity test is, under *Schad,* merely a means of "measur[ing] . . . the sense of appro-priate specificity." *Id.* at 570. In other words, the due process clause of the fourteenth amendment protects a criminal defendant against a state's "freakish defini-tion of the elements of a crime that finds no analogue in history or in the criminal law of other jurisdictions." *Id.* at 571 (footnote omitted). Thus, the *Schad* plurality's due process test does not replace the jury-unanimity requirement; the plurality merely opines that the state's definition of a crime must be tested against the due process clause. Because Seymour does not claim that the legislature's definition of "theft" in sec.

943.20(1)(b), Stats., is "freakish" or beyond the power of the legislature, *Schad* is simply irrelevant to our case.

Our inquiry in this case is limited to determining the legislature's intent: Did the legislature intend that the statutory alternatives, "uses," "transfers," "conceals" or "retains possession" are mere means of committing a single offense, or did the legislature intend to define independent offenses? We believe that the Wisconsin Supreme Court decisions in *State v. Genova*, 77 Wis. 2d 141, 252 N.W.2d 380 (1977), and *State v. Tappa*, 127 Wis. 2d 155, 378 N.W.2d 883 (1985), require that we conclude that the legislature intended in sec. 943.20(1)(b), Stats., to enumerate independent offenses and not mere means by which the offense of theft may be committed.

*Genova* and *Tappa* construed sec. 943.20(1)(a), Stats., but are persuasive in interpreting sec. 943.20(1)(b), Stats. The two statutes were enacted simultaneously as part of the revision of the criminal code. Chapter 696, Laws of 1955.

In *Genova*, the court concluded that the trial court incorrectly dismissed a complaint charging defendant with theft under sec. 943.20(1)(a), Stats. The defendant was charged with transferring property of another contrary to the statute. The trial court interpreted the statute as requiring defendant to first take property from its owner and then, in addition, engage in one of the alternatively listed kinds of conduct. The supreme court disagreed and accepted the state's argument that the statute should be read in the disjunctive, not the conjunctive:

> The State argues that the statute should be read as if the following "ors" appeared in the statute: takes and carries away, *or* uses *or* transfers *or* conceals *or*

retains. We agree with the State's interpretation of the statute that a violation of sec. 943.20(1)(a), Stats., need not include a taking from the owner.

*Genova*, 77 Wis. 2d at 145, 252 N.W.2d at 382 (emphasis in original). The court said that: "An individual who does any one of those acts—takes, uses, transfers, conceals or retains possession—would violate the statute." *Id.* at 147, 252 N.W.2d at 384.

In *Tappa*, the defendant was convicted of three counts of theft under sec. 943.20(1)(a), Stats.: one count of concealing stolen property and two counts of transferring such property. Defendant moved to dismiss the information as multiplicitous. Multiplicity is the charging of a single offense in separate counts. *Tappa*, 127 Wis. 2d at 161, 378 N.W.2d at 885. The court rejected defendant's argument that the information was multiplicitous. The court said that sec. 943.20(1)(a) "is to be read as five disjunctive acts." *Id.* at 167-68, 378 N.W.2d at 888 (citing *Genova*, 77 Wis. 2d at 145, 252 N.W.2d at 382-83). The court also construed *Jackson*:

> The *Jackson* decision does not stand for the proposition that the state must plead only one of the five elements of the theft statute. *Jackson* requires each count in an information or complaint to allege only one of the elements of the theft statute if a disjunctive charge would use non-synonymous terms. *Each of the disjunctive terms describes a separate type of "theft" or property deprivation.* It in no way limits the number of charges that the prosecution may file.

*Id.* at 168, 378 N.W.2d at 889 (emphasis added).

To determine whether the information was multiplicitous, the *Tappa* court considered whether transfer and concealment were sufficiently different to

316

justify charging them as separate offenses. *Id.* at 168-69, 378 N.W.2d at 889. The court said that: "A defendant ought not be charged, tried, or convicted for offenses that are substantially alike when they are a part of the same general transaction or episode." *Id.* at 169, 378 N.W.2d at 889 (quoting *State v. Eisch*, 96 Wis. 2d 25, 34, 291 N.W.2d 800, 805 (1980)). The court concluded that transfer and concealment were significantly different acts: "We hold that a common sense reading of the statute [sec. 943.20(1)(a), Stats.] supports the conclusion that transfer and concealment are separate offenses." *Tappa*, 127 Wis. 2d at 170, 378 N.W.2d at 890. The court therefore concluded that the state's right to allege multiple charges under sec. 943.20(1)(a) "is subject to prosecutorial charging discretion and to judicial discretion in sentencing." *Id.* at 171, 378 N.W.2d at 890.

The *Tappa* court also discussed *Manson v. State*, 101 Wis. 2d 413, 304 N.W.2d 729 (1981). In *Manson* the defendant contended that the trial court's instruction on armed robbery deprived him of a unanimous verdict. The court looked at sec. 943.32(1), Stats. (1977), to determine whether the statute defined two offenses: robbery by use of force, and robbery by threat of imminent use of force. *Id.* at 419, 304 N.W.2d at 732. The court said:

> [I]f we determine that sec. 943.32(1) defines two crimes then it is clear that jury unanimity as to each crime is required to convict the defendant of each crime. If we determine that the statute creates a single crime, we must then determine whether the jury may be instructed in the disjunctive without being instructed that jury unanimity is required as to each alternative.

317

*Id.* The court concluded that the determination of whether the statute defined a single crime or two separate crimes depended on legislative intent. *Id.* at 422, 304 N.W.2d at 734. The factors relevant to the determination of legislative intent are: "(1) the language of the statute; (2) the legislative history and context of the statute; (3) the nature of the proscribed conduct; and (4) the appropriateness of multiple punishment for the conduct." *Id.*

After analyzing the statute in relation to these factors, the court stated that "a common sense reading of the statute which is reasonable and fair to offenders and society is that one offense is intended." *Id.* at 428, 304 N.W.2d at 736. The court further concluded that the use of force and the threat of imminent use of force were sufficiently similar to comprise but a single element of the offense of armed robbery. *Id.* at 429-30, 304 N.W.2d at 737. The court said that: "The essence of the offense of robbery is compelling the owner to part with his property under compulsion resulting from defendant's conduct directed against the person of the owner or against another who is in the owner's presence." *Id.* at 430, 304 N.W.2d at 737. The court further stated that, "The jury should not be obliged to decide between two statutorily prohibited ways of committing the crime if the two ways are practically indistinguishable." *Id.* The court therefore concluded that an instruction requiring unanimity as to the means by which the defendant committed the single crime of robbery was not required. *Id.*

The state does not argue that use, transfer, conceal or retaining possession are "practically indistinguishable." It contends, however, that the statutory alternatives for committing theft under sec. 943.20(1)(b), Stats., are not so significantly different as

to require jury unanimity on the precise manner in which the statute was violated. The state relies on *United States v. Acosta*, 748 F.2d 577 (11th Cir. 1984), and *United States v. McPherson*, 782 F.2d 66 (6th Cir. 1986). In each of these cases, the defendant was convicted of violating 18 U.S.C. § 656 and attacked the jury instruction on the grounds that the instruction authorized the jury to return a non-unanimous verdict. The statute penalized whoever "embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of [a member] bank . . . ." In each case the jury was instructed according to the statute. In each case the court rejected defendant's attack on the jury instructions. In *Acosta*, the court held that the statute "embraces" but a single generic offense, "the offense of willfully *taking* the money of a bank by one of its employees, which offense may be committed in several alternative ways: embezzling (a taking), abstracting (a taking), purloining (a taking), and misapplying (a taking)." *Acosta*, 748 F.2d at 579. In *McPherson*, the Sixth Circuit Court of Appeals reached the same result as the *Acosta* court.

Each court considered that its decision was controlled by *Turner*, 396 U.S. 398. In *Turner*, the second count of an indictment charged defendant under 26 U.S.C. § 4704 with knowingly purchasing, dispensing *and* distributing heroin not in or from the original stamped package. The Court held:

> The conviction on Count 2 with respect to heroin must be affirmed. . . . The general rule is that when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, as Turner's indictment did, the verdict stands if the evidence is sufficient with respect to any one of the acts charged. Here the evidence proved Turner was

distributing heroin. The status of the case with respect to the other allegations is irrelevant to the validity of Turner's conviction.

396 U.S. at 420-21.

*Acosta* and *McPherson* support our conclusion. Each case involved a statute which the court found to allege the offense of misapplication in synonymous terms. Here, we are presented with persuasive, if not precedential, Wisconsin Supreme Court decisions holding that the words "uses," "transfers," "conceals" and "retains possession" are not synonyms defining the offense of theft, but describe separate offenses. In the absence of evidence that the legislature intended to use these words in sec. 943.20(1)(b), Stats., differently than it uses these words in sec. 943.20(1)(a), Stats., we cannot conclude that such words were intended to describe mere means of committing the same offense, rather than describing separate offenses. We have examined the Criminal Code Interim Committee's comments to the code sections, including sec. 943.20, Stats., contained in bill No. 814, A. [Chapter 696, Laws of 1955], and find no evidence of such intent. *See also* Melli and Remington, *Theft—A Comparative Analysis of the Present Law and the Proposed Criminal Code*, 1954 WIS. L. REV. 253 (1954); Baldwin, *Criminal Misappropriation in Wisconsin—Part I*, 44 MARQ. L. REV. 253 (1960-61).

The development of the jury instructions for sec. 943.20(1)(b), Stats., confirms our conclusion that the legislature intended the statute to state distinct offenses rather than mere means of violating the statute. Wisconsin J I—Criminal 1444, Theft by Employe, Trustee or Bailee (Embezzlement), was originally published in 1966. The instruction read in part:

320

Theft, as defined in sec. 943.20(1)(b) of the Criminal Code of Wisconsin is committed by one who (*by virtue of his . . . (employment)*) . . . having possession or custody of money . . . intentionally (*uses*) (*transfers*) (*conceals*) (*retains possession of*) such (*money*) . . . without the owner's consent, contrary to his authority, and with intent to convert to his own use or to the use of any other person except the owner.

. . . .

If you are satisfied beyond a reasonable doubt from the evidence in this case that the defendant, by virtue of his . . . (*employment*) . . . had possession or custody of (*describe property in question*), that the defendant intentionally (*used*) (*transferred*) (*concealed*) (*retained possession of*) such property without the owner's consent and contrary to his authority . . . then you should find the defendant guilty of theft as charged in the (*information*) (*complaint*) . . . .

If, however, you are not so satisfied, then you must find the defendant (*not guilty*) (*not guilty of theft*).

*Id.* (italics in original; footnotes omitted). Footnote eleven to the instruction's last sentence stated: "The appropriate instruction (*in parentheses*) should be given. . . ." Plainly, the jury instructions committee considered that theft, as defined in sec. 943.20(1)(b), Stats., consisted of distinct offenses on which the court should instruct as appropriate.

Wisconsin J I—Criminal 1444 was revised and the revision approved by the Criminal Jury Instructions Committee in September 1989. The revision involved nonsubstantive editorial changes, the reference to the finding of value, and an updating of the footnotes. Footnote two states in part:

> The summary of this offense in the first paragraph, and the elements of the instruction, represent a considerable simplification of a rather complex statutory definition. . . . "Uses" was selected rather than "transfers," "conceals" or "retains possession of." Rather than carry all these alternatives in parentheses throughout the instruction, the Committee concluded it was more efficient to select the simpler statement that ought to be general enough to cover the most common cases.

Wisconsin J I—Criminal 1444, at 2 n.2 (1990). It is clear that the committee did not consider that by simplifying the instruction it was making a substantive change. The 1989 revision does not, therefore, represent a change in the committee's interpretation of sec. 943.20(1)(b), Stats.

 While jury instructions are not precedential, they are persuasive authority. *State v. Olson*, 175 Wis. 2d 628, 642 n.10, 498 N.W.2d 661, 667 n.10 (1993). The construction of sec. 943.20, Stats., by the jury instructions committee which drafted the first instructions under the new law is especially persuasive because two of the five members of the committee served on the Criminal Code Advisory Committee, which in 1953-55 prepared the statute in the form in which it was ultimately enacted. *See Genova*, 77 Wis. 2d at 150, 252 N.W.2d at 385.[4] In addition, Assistant Attorney General William A. Platz and Professor Frank J.

---

[4] In his amicus brief in *Genova*, Professor Frank J. Remington argued that the committee would not have proposed the theft instruction unless the four former members of the Criminal Code Advisory Committee agreed that the instruction properly construed the purpose of the Advisory Committee and the drafters of the statute. 77 Wis. 2d at 150, 252 N.W.2d at 385.

Remington, who also served on the advisory committee, served as technical advisers to the jury instruction committee. *Id.*

■ After analyzing sec. 943.20(1)(b), Stats., in relation to the factors relevant to the determination of legislative intent, we find no indication that the legislature intended that that section is to be construed differently from sec. 943.20(1)(a), Stats. We conclude that in sec. 943.20(1)(b) the legislature intended to define distinct offenses of theft by employee, and not mere means of committing a single offense. Our conclusion requires that Seymour be given a new trial at which the jury shall be properly instructed. We need not address the additional issues raised by Seymour; these issues relate to alleged trial error which may not recur.

*By the Court.*—Judgment reversed and cause remanded.

DYKMAN, J. (*dissenting*). The majority relies upon a trilogy of cases, *State v. Tappa*, 127 Wis. 2d 155, 378 N.W.2d 883 (1985), *State v. Genova*, 77 Wis. 2d 141, 252 N.W.2d 380 (1977), and *Jackson v. State*, 92 Wis. 2d 1, 284 N.W.2d 685 (Ct. App. 1979), as authority for its conclusion that Seymour was denied certain rights. But *Schad v. Arizona*, 501 U.S. —, 115 L. Ed. 2d 555 (1991),[1] requires that a different analysis be used when analyzing a contention that the right to jury unanimity was violated because a statute and corresponding jury instructions define a crime as being committed in several, conceptually different ways.

---

[1] Unless otherwise noted, citations to this case are to the plurality opinion delivered by Justice Souter and joined by Chief Justice Rehnquist and Justices O'Connor and Kennedy.

*Schad* identifies this issue as one governed by the due process clause of the fourteenth amendment to the United States Constitution. 115 L. Ed. 2d at 564-66.

In *Jackson*, we accepted the rationale of *United States v. Gipson*, 553 F.2d 453 (5th Cir. 1977), as to jury-unanimity cases. But *Schad* does not accept *Gipson's* approach.

> It is tempting, of course, to follow the example of *Gipson* to the extent of searching for some single criterion that will serve to answer the question facing us. We are convinced, however, of the impracticability of trying to derive any single test for the level of definitional and verdict specificity permitted by the Constitution, and we think that instead of such a test our sense of appropriate specificity is a distillate of the concept of due process with its demands for fundamental fairness . . . .

*Schad*, 115 L. Ed. 2d at 569.

Both the plurality and the concurrence in *Schad* identify generic or freakish groupings of acts which would arguably offend the due process clause if a jury were not required to agree on the method by which a defendant violated the statute. A crime which permitted any combination of jury findings of embezzlement, reckless driving, murder, burglary, tax evasion or littering, *Schad*, 115 L. Ed. 2d at 566, or robbery or failure to file a tax return, *Schad*, 115 L. Ed. 2d at 577 (Scalia, J., concurring), are examples of legislative extremes which might not survive a due process challenge. Section 940.225(1), Stats. (1985-86), could have been open to such a challenge, if jury unanimity was not required by instruction or verdict. That statute, now repealed, defined first-degree sexual assault as, among other things, sexual contact with a person twelve years of age or younger, or as nonconsensual

sexual contact by the use, or threat of use, of a dangerous weapon.

The new test developed by *Schad* is highly deferential. "The enquiry is undertaken with a threshold presumption of legislative competence to determine the appropriate relationship between means and ends in defining the elements of a crime." *Schad*, 115 L. Ed. 2d at 569. "Respect for this legislative competence counsels restraint against judicial second-guessing . . . ." *Id.* The Court, recognizing that it is impossible to define a single test for determining when two means are so disparate as to exemplify two inherently separate offenses, defined the new inquiry as follows:

> Where a State's particular way of defining a crime has a long history, or is in widespread use, it is unlikely that a defendant will be able to demonstrate that the State has shifted the burden of proof as to what is an inherent element of the offense, or has defined as a single crime multiple offenses that are inherently separate. Conversely, a freakish definition of the elements of a crime that finds no analogue in history or in the criminal law of other jurisdictions will lighten the defendant's burden.

*Id.* at 570-71 (footnote omitted).

Using *Schad's* historical analysis, I conclude that sec. 943.20(1)(b), Stats., does not contain a freakish definition of embezzlement. I also conclude that the use of the terms "uses," "transfers," "conceals" and "retains possession of," or similar words, have a long history in Wisconsin. That history, abridged somewhat, shows the following.

Revised Stats. (1849), ch. 134, secs. 22-26 define various sorts of embezzlement using the words "embezzle," "fraudulently convert," "take," "sell" and "dispose

of." Section 4418, Stats. (1913), uses "embezzle," "fraudulently convert," "take," "carry away" and "secrete." Section 343.20, Stats. (1929), uses the words "embezzle," "fraudulently convert," "take," "carry away" and "secrete." Section 943.20(1)(b), Stats. (1955), uses the words found in the present statute.

The concepts of using, transferring, concealing and retaining possession of another's property have been a part of Wisconsin criminal law since statehood. Then, as now, these concepts have been stated in the disjunctive. Nor is the Wisconsin definition of embezzlement unique. Michigan prohibits embezzlement using the words "dispose of," "convert," "take" and "secrete" disjunctively. MICHIGAN COMP. LAWS ANN. § 750.174 (West 1991). Illinois prohibits embezzlement in its theft statute, ILL. COMP. STAT. ANN. 720 ILCS 5/16-1 (West/Smith-Hurd 1993), using the words "obtains or exerts unauthorized control over." Iowa defines embezzlement as theft, using the words "using," "disposing of," "conceals" and "appropriates" in the disjunctive. IOWA CODE § 714.1 (1993). Minnesota also defines embezzlement as theft, using the words "takes," "uses," "transfers," "conceals" and "retains possession of" in the disjunctive. MINNESOTA STAT. ANN. § 609.52, subd. 2. (West 1987 & Supp. 1993).

All of the states surrounding Wisconsin use more than one word, in the disjunctive, to prohibit embezzlement. The words used by these states are similar or identical to the words pertaining to embezzlement found in our statute prohibiting theft, sec. 943.20(1)(b), Stats.: "uses," "transfers," "conceals" and "retains possession of."

I conclude that under *Schad's* "long history" and "widespread use" tests, Seymour was not deprived of due process of law by the trial court's refusal to instruct

the jury that it must be unanimous as to which acts Seymour committed. *Schad* makes it clear that although the state cannot have it all ways at once, states have great latitude in defining their criminal law. It is only where a district attorney wishes to prosecute under statutes which have a generic or freakish combination of methods by which a crime may be committed that he or she must exercise caution, and then only if the jury is not required to unanimously decide the method used by the defendant.

The majority's response to *Schad* is to conclude that the case is irrelevant because Seymour does not claim that the legislature's definition of theft in sec. 943.20(1)(b), Stats., is freakish. Seymour does not make that claim. But the *Schad* court held that in the absence of such a claim, the fourteenth amendment was not offended where a state permitted a jury to convict without stating which of two different factual circumstances it had used to arrive at its guilty verdict.

The problem that Seymour posits is that he might have been convicted even though twelve jurors did not agree that his actions constituted a particular crime. That problem occurs, whether the state defines the "crime" by alternative means of commission or as a series of elements or offenses, whenever a disjunctive instruction is given without a requirement of unanimity. These distinctions have no effect on the deliberations of jurors so instructed. And the significant point of *Schad* is that a conviction under these circumstances does not offend the due process clause of the fourteenth amendment.

The defendant in *Schad* made the same argument that Seymour makes—the requirement of jury unanimity necessitated setting his conviction aside. Five

members of the Supreme Court rejected that assertion, identifying it as a due process challenge.

Were I writing for a majority, I would now address Seymour's other assertions of error. But in a dissent, an explanation of additional reasons why I would affirm Seymour's judgment of conviction has little value. The slim benefit of such an analysis is outweighed by the efficient allocation of judicial resources. Accordingly, I limit this dissent to my reasons for differing with the majority's jury-unanimity analysis.