STATE, Respondent, v. BAILEY, Appellant.

*No. State 163. Argued March 29, 1972.—Decided May 2, 1972.*
(Also reported in 196 N. W. 2d 664.)

For the appellant there was a brief by *Adrian P. Schoone,* attorney, and *Martin I. Hanson* of counsel, both of Racine, and oral argument by *Mr. Schoone.*

For the respondent the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HEFFERNAN, J.   The theory of the defense at trial revealed some inconsistencies. There was some testimony which would appear to rely on the theory of self-defense, but the major thrust of the defense case was that the defendant was too intoxicated to be able to form a criminal intent. There was no issue in respect to the actual killing.

The defendant introduced a blood sample taken from the defendant shortly after his arrest. This sample showed .23 percent alcohol by weight. The city chemist was asked by defense counsel the effect that such a blood alcohol content would have on the person from whom the sample was taken.[1] The prosecutor objected to this testimony on the ground that the chemist was not competent to testify as an expert on the physiological effects that the alcohol would have on the defendant. The objection was sustained. We are satisfied that the evidentiary ruling was correct. Although the city chemist was undoubtedly qualified to testify about the blood

---

[1] While we are satisfied that the evidence was properly excluded, we point out that, in the absence of an offer of proof spread on the record, this court could not hold even an erroneous exclusion of evidence prejudicial. *Deja v. State* (1969), 43 Wis. 2d 488, 492, 168 N. W. 2d 856.

alcohol content, it was beyond the range of his expertise to testify as to its effect. He acknowledged that he had never observed the donors of blood from whom the blood alcohol samples were taken. While even a lay witness may give his opinion as to intoxication from the actual observation of the subject, the chemist was not qualified to express an opinion based on a blood sample alone.

Sec. 939.42, Stats., provides:

"An intoxicated or a drugged condition of the actor is a defense only if such condition:
"(1) . . .
"(2) Negatives the existence of a state of mind essential to the crime."

While there was testimony that the defendant was intoxicated, there was no testimony which could lead to the conclusion that the defendant was physically or mentally incapacitated by alcohol to the degree that would negative the intent to kill. The defendant himself testified that he knew what the consequences of his act would be. He at no time indicated that he sustained a blackout or that he failed to appreciate fully what was going on. He recounted his version of the events leading up to the shooting in great detail.

On the hearing on the motion for a new trial, an affidavit of Shirley Lezine was presented. She concluded that the defendant was intoxicated. Although that evidence was submitted as newly discovered evidence, it was merely cumulative, in that it merely corroborated the defendant's statement that he was in full possession of his faculties although he was somewhat "high." Although Shirley Lezine's affidavit is highly probative of the fact that the defendant was "very intoxicated," it is not probative of the degree of intoxication that would negative the requisite intent to kill.

In *Lasecki v. State* (1926), 190 Wis. 274, 208 N. W. 868, this court sustained a jury's verdict of acquittal. The record there shows:

"... he was so drunk that his companions insisted that others should drive the car. He continued drinking. His eyes became glassy. His companions noticed that he was very much under the influence of liquor. He staggered so that he had difficulty in getting into his brother's home when he came there in the early morning. He himself testified that he had no recollection as to what occurred after he left the roadhouse until he reached his brother's home. Under this proof the jury might readily give defendant the benefit of the doubt and conclude that he was too much under the influence of liquor to form the premeditated design to kill which is the distinguishing element of murder in the first degree." (P. 279)

Although the record herein contained no such evidence of gross intoxication, the trial judge nevertheless included an instruction on the defense of intoxication. On this appeal counsel argues, as he did on the motion for a new trial, that the instruction given was erroneous. The intoxication instruction followed the Wisconsin Jury Instructions—Criminal No. 765 and extensively set forth that "an accused is not guilty if, at the time of the commission of the alleged criminal act, he was so intoxicated that he was unable to form the essential intent or have the essential mental state." Defendant points out, however, correctly, that a portion of the instruction as it appears in the transcribed record was clearly in error. The record shows the instruction:

"If the defendant, because of his condition, was incapable of forming and, therefore, did not form the intent to kill another human being, then you must find him guilty of first degree murder as charged in the information."

It is clear that the proper instruction should have provided that, "you must not find him guilty." This alleged error was thoroughly examined at the time of the motion for a new trial. The reporter was called, and she testified that she had erred in transcribing her notes

and that the oral instruction read to the jury was correct. The judge so found, concluding that the transcript did not reflect the proper state of the record and that the jury had been properly instructed. We are satisfied that the evidentiary finding underpinning this conclusion is undisputed. We should also point out that, had the error occurred, it was so clearly contrary to the theme of the entire intoxication instruction that the jury would have at once been aware of the confusion in instructions. We are satisfied, however, that no error occurred.

At the original trial the defendant testified that he fired the first shot into the floor for the purpose of making Lezine "come out of the dark where I could see him." At that trial the district attorney pointed out that no bullet had been discovered. The district attorney attempted to impeach the defendant's testimony and apparently attempted to prove that both shots had been fired at the defendant. After the trial further investigation by the police department revealed a bullet embedded at a depth of three inches in the bedroom floor. It was determined that this bullet was fired from the same gun that killed Bernard Lezine. The defendant argues on this appeal that this is newly discovered evidence which warrants a new trial. We do not agree. The criteria which must be met to have newly discovered evidence constitute a basis for a new trial were set forth in *State v. Herfel* (1971), 49 Wis. 2d 513, 521, 522, 182 N. W. 2d 232:

"(1) The evidence must have come to the moving party's knowledge after a trial; (2) the moving party must not have been negligent in seeking to discover it; (3) the evidence must be material to the issue; (4) the testimony must not be merely cumulative to the testimony which was introduced at trial; and (5) it must be reasonably probable that a different result would be reached on a new trial."

While the bullet itself was newly discovered evidence, there was considerable testimony before the jury from which it could have found that the first shot was fired into the floor. To that extent, the evidence is cumulative. In addition, it was undisputed that at least two shots were fired. Consequently, the discovery of the bullet is only cumulative to the evidence introduced at trial relating to the multiple firing of the pistol. Most importantly, however, it is difficult to conclude that, had the bullet been found and introduced at the original trial, a different result would have been reached. According to defendant's own testimony, he fired when it appeared that Lezine "leaped" at him in the doorway. Even the evidence of the warning shot embedded in the floor does not raise a reasonable doubt that the defendant fired with the requisite intent when, as defendant stated, Lezine leaped at him.

One of the defendant's witnesses, Calvin Wright, testified in corroboration of the defendant's statement that the bedroom was unlit. He also testified that the first shot was fired into the floor. On cross-examination, Wright, who was a cousin of the defendant, was asked whether he belonged to a group called the "Commandos." He was asked whether Bailey was also a Commando, and he replied affirmatively. Wright stated that he was a lieutenant in the Commandos and that Bailey was the general. After this evidence came in, trial counsel made the late objection on the ground that the information was immaterial. On this appeal the argument is made that the question asked by the district attorney was an appeal to prejudice, since the Commandos were an organization that had been formed for the purpose of protecting black civil-rights demonstrators. After some discussion the trial judge instructed the jury to disregard the testimony. A review of the district attorney's course of questioning indicates that he was attempting

to show the close association between the witness and the defendant in order to impeach his credibility. Under such circumstances, even though the questions were found to contain elements of prejudice, it was within the judicial discretion to determine whether the probative value of the testimony outweighed any possible prejudicial effect. *Whitty v. State* (1967), 34 Wis. 2d 278, 292, 149 N. W. 2d 557. Moreover, it appears that, where the objection was timely made, the jury was instructed to disregard the testimony. We are satisfied that the questions were asked for the probative effect of the answers and that probative effect outweighed the very minimal prejudice that could have resulted.

Defendant also claims that he was prejudiced by the refusal to admit evidence on redirect which would have explained the nature of a prior conviction which Calvin Wright admitted on cross-examination. When asked on cross-examination by the prosecution whether he had ever been convicted of a crime, Wright truthfully answered, "Once." On redirect, defense counsel attempted to show that the crime was not one involving credibility. The trial judge refused the rehabilitative testimony on the grounds that it was immaterial whether or not the crime was one which went to the witness' credibility. The trial judge was in error and confused the rule in respect to rehabilitative testimony with that which may be elicited on cross-examination. We have, of course, on many occasions stated that the state may bring out the fact that a witness was convicted of a crime and that such questioning need not be limited only to those crimes relating to honesty and veracity. *Nicholas v. State* (1971), 49 Wis. 2d 683, 183 N. W. 2d 11. Counsel for the state, however, misunderstands the holding of *Nicholas v. State* when he cites it for the proposition that the proponent of the testimony cannot explain the nature of the crimes and attempt to show that they are not

related to truth and veracity. *Nicholas v. State* clearly points out that the state is not allowed to "expatiate on the nature and details of the past crimes." (P. 688) It points out that the party's own attorney may, however, elicit the information on the nature of the crimes "in the hope that the impact of this information on the jury will be less if it is brought out on direct instead of on cross-examination. This tactic is permissible." (P. 689) It is equally permissible where the witness has replied truthfully in response to the state's questions on cross-examination and an explanation of the crime is offered on redirect. The nature of the crime may be explained to rehabilitate the witness. The proper rule appears in *Remington v. Judd* (1925), 186 Wis. 338, 341, 342, 202 N. W. 679:

". . . if there had been proper proof of a prior conviction brought into the case by the cross-examination of a witness, such witness should be permitted, if he so desires, to tell on redirect examination, in a general way, the nature of the offense for which such conviction was had; not of course for the purpose of a retrial of the criminal proceedings, but that the jury may better tell to what extent his credibility is impaired, for manifestly offenses vary within vast ranges as to their impeaching power."

While it is apparent that the trial judge clearly erred, the error was not prejudicial. This was a minor episode in a long trial. In view of the overwhelming evidence before the jury, it is impossible to conclude that the admission of the rehabilitative information would have been material. We said in *State v. Esser* (1962), 16 Wis. 2d 567, 599, 115 N. W. 2d 505:

" 'Errors committed in the course of a trial will not operate to disturb a judgment on appeal unless it appears pretty clearly that had they not occurred, the result might probably have been more favorable to the party complaining.' "

Additionally, the defendant claims that the prosecuting attorney made prejudicial statements at the time the prospective jurors were questioned on *voir dire* and also in the final argument. In neither instance were objections voiced by the defense attorney. In the absence of such objections timely made, followed by an appropriate motion for mistrial, this court will not review alleged prejudicial statements by the attorney for one of the parties. *Kink v. Combs* (1965), 28 Wis. 2d 65, 72, 73, 135 N. W. 2d 789.

Counsel on appeal also asks for a reversal in the interest of justice. We have frequently stated that a new trial will not be granted on those grounds unless it is apparent that justice has miscarried and that a new and error-free trial would lead to a different result. *Commodore v. State* (1967), 33 Wis. 2d 373, 383, 147 N. W. 2d 283. Moreover, in this case it is apparent that none of the errors, nor all of the errors when cumulatively considered, were of such import that, had they not occurred, the result probably would have been different. There was clearly sufficient evidence introduced to prove the defendant guilty of first-degree murder. The alleged errors were carefully and methodically reviewed by the trial judge on the motions for a new trial. We are satisfied that, with minor exceptions noted in the opinion, the points raised were properly disposed of in the trial judge's memorandum decision.

*By the Court.*—Order affirmed.