STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Douglas SEYMOUR, Defendant-Appellant.

Supreme Court

*No. 91–2962–CR. Oral argument March 31, 1994.—Decided May 25, 1994.*

(Also reported in 515 N.W.2d 874.)

For the defendant-appellant there was a brief by *John M. Brinckman* and *John M. Brinckman & Associ-*

*ates,* LaCrosse and oral argument by *John M. Brinckman.*

For the plaintiff-respondent-petitioner the cause was argued by *Mary Burke,* assistant attorney general, with whom on the briefs were *Marguerite M. Moeller,* assistant attorney general and *James E. Doyle,* attorney general.

JANINE P. GESKE, J.   This is a review of a published decision of the court of appeals, *State v. Seymour,* 177 Wis. 2d 305, 502 N.W.2d 591 (Ct. App. 1993), which reversed a judgment of the circuit court for La Crosse county, Peter G. Pappas, Circuit Judge. A majority of the court of appeals (Dykman, J., dissenting) concluded that sec. 943.20(1)(b), Stats., should not be construed differently than sec. 943.20(1)(a).[1] Rather, sec. 943.20(1)(b) should be read to include distinct offenses of theft by an employee, and not a mere means of committing a single offense. Consequently, the circuit court erred when it disjunctively instructed the jury on the alternative means of committing theft

---

[1] Section 943.20(1), Stats., states in pertinent part:

**943.20 Theft. (1)** *Acts.* Whoever does any of the following may be penalized as provided in sub. (3):

(a)   Intentionally takes and carries away, uses, transfers, conceals, or retains possession of movable property of another without his consent and with intent to deprive the owner permanently of possession of such property.

(b)   By virtue of his office, business or employment, or as trustee or bailee, having possession or custody of money or of a negotiable security, instrument, paper, or other negotiable writing of another, intentionally uses, transfers, conceals, or retains possession of such money, security, instrument, paper or writing without the owner's consent, contrary to his authority, and with intent to convert to his own use or to the use of any other person except the owner. . . .

under sec. 943.20(1)(b) without also instructing that the jurors must unanimously agree on the manner in which the statute was violated. The court of appeals ordered that the defendant, Douglas Seymour (Seymour), be given a new trial, at which time the jury would be properly instructed.

The issue in this case is whether the manner in which the jury was instructed by the court infringed upon Seymour's rights to a unanimous verdict and due process of law. Specifically, when a jury is instructed on the alternative means of committing theft under sec. 943.20(1)(b), Stats., should there be a second instruction that the jurors unanimously agree on the manner in which the statute was violated? Our examination of the legislative history of sec. 943.20, as well as the holdings in *State v. Tappa,* 127 Wis. 2d 155, 378 N.W.2d 883 (1985); *State v. Genova,* 77 Wis. 2d 141, 252 N.W.2d 380 (1977); and *Jackson v. State,* 92 Wis. 2d 1, 284 N.W.2d 685 (Ct. App. 1979), leads us to conclude that secs. 943.20(1)(a) and (b) must be construed identically. Each subsection uses words which were intended to describe independent offenses rather than simply delineating methods by which the same offense may be committed. Therefore, we affirm the decision of the court of appeals.

The facts of this case are as follows. Seymour was employed by Clower Construction and Development, Inc. (Clower Construction) as a carpenter in the fall of 1988. In the spring of 1989, Seymour began his own business, Seymour Enterprizes and Consultants. During that period, Seymour contacted Paul Clower (Clower) and persuaded him to incorporate his construction business, in addition to employing Seymour as an office manager and financial consultant on a part-time basis. As part of this one-year venture, Sey-

mour was to handle the financial aspects of the business. Additionally, Seymour was to bill the services of his consulting company through Clower Construction. At the outset, Clower and Seymour established a $25,000 line of credit and four checking accounts. Seymour then obtained a second $25,000 line of credit for Seymour Enterprizes, which was occasionally used to supplement Clower Construction's cash flow.[2]

In February, 1990, Seymour and Clower terminated their business relationship following a period of difficulties which began the previous fall.[3] In March, 1990, an examination of Clower's books revealed that

[2] The first line of credit and the checking accounts were established at Clower Construction's bank, the Exchange State Bank in La Crosse. Two checking accounts were in the name of Clower Construction and two were in the name of Seymour Enterprizes.

[3] The criminal complaint states that on June 12, 1989, Seymour withdrew $2000 from the Clower Construction credit line, instructing the corporation's bank to disburse $1220 to Seymour Enterprizes' main checking account and $780 to the second Seymour checking account. Then, on June 19, 1989, Seymour withdrew $5000 from the Clower Construction credit line, instructing the bank to disburse $2000 to the Clower Construction checking account and $3000 to the Seymour Enterprizes main checking account.

According to Seymour, these transfers were necessary in order to facilitate certain business transactions conducted by Seymour Enterprizes for the benefit of Clower Construction. Seymour also maintains that Nancy Wetzel (bookkeeper for Clower Construction and Seymour Enterprizes) had, on a number of occasions, entered check and deposit amounts out of order into the checking account registers, so as to avoid dealing with negative balances. Additionally, some entries were not made into various corporate books. On the above dates, Seymour

$15,000 had been transferred from the Clower Construction credit line or checking accounts into a Seymour Enterprizes checking account. Bank records indicated that on May 19, 1989, Seymour transferred the $15,000 from the Clower Construction credit line to the Clower Construction main checking account. From there, $10,000 was transferred to a Seymour Enterprizes checking account, to which Clower did not have access. On May 24, 1989, Seymour issued a check, drawn on the Seymour Enterprizes account, in the amount of $7,000, for deposit into the Clower Construction checking account.

A criminal complaint was issued in May, 1990, charging Seymour with three counts of violating sec. 943.20(1)(b), Stats. Each count alleged that Seymour "intentionally used, transferred, *and* retained possession" of money he held by virtue of his employment as a trustee or bailee.[4] (Emphasis added.)

---

states that the transfers were recorded in the Seymour Enterprizes books but not in the Clower Construction books.

Finally, on October 2, 1989, Seymour issued two checks, drawn on Clower Construction, to Seymour Enterprizes' line of credit. The checks totaled $25,899.35 and were allegedly issued to satisfy Clower Construction's indebtedness to Seymour Enterprizes.

Both Paul Clower and Nancy Wetzel indicated to investigators that they were not aware of the transfers nor had consent for the transfers been received.

[4] The wording of the information was almost identical to that of the criminal complaint. Specifically, the information listed three counts against Seymour, alleging that at the Exchange State Bank in La Crosse, in May and June, 1989, he

> by virtue of his employment or as trustee or bailee, having possession or custody of money, intentionally used, transferred, *and* retained possession of such money without the owner's consent, contrary to his authority and with intent to convert to his own use

688

During preliminary instructions at the beginning of the trial, the court told the jury that the charge against Seymour was "generically stated as being embezzlement or theft" and described each of the elements of sec. 943.20 as involving the *use* of another's money without consent.[5]

At the conclusion of the state's case, Seymour moved to dismiss the information, claiming that there was insufficient evidence to prove that he had *used* or *transferred* money belonging to Clower Construction. The court denied the motion to dismiss following the prosecution's argument that even if Seymour's argument was accepted, he was also charged with having *retained possession* of Clower Construction's money.

---

or to the use of any other person except the owner, and said money exceeding $2,500, contrary to Wis. Stat. Sec. 943.20(1)(b), (3)(c), a Class 'C' Felony, and against the peace and dignity of the State of Wisconsin, punishable by a fine not to exceed $10,000 or imprisonment not to exceed 10 (ten) years, or both;

On or about June 12, 1989 . . . the defendant . . . intentionally used, transferred, *and* retained possession of such money without the owner's consent . . . and said money exceeding $500, contrary to Wis. Stat. Sec. 943.20(1)(b), (3)(b), a Class 'E' Felony . . .;

On or about June 19, 1989 . . . the defendant . . . intentionally used, transferred, *and* retained possession of such money without the owner's consent . . . and said money exceeding $2,500 in value, contrary to Wis. Stat. Sec. 943.20(1)(b), (3)(c), a Class 'C' Felony . . ..

(Emphasis added.)

[5] In preliminary instructions to the jury, the circuit court read the pattern jury instruction, Wis. J I—Criminal 1444. Comment 2 to that instruction notes that the word "uses" was selected rather than "transfers," "conceals," or "retains possession of," for the purpose of simplifying a complex statutory definition. The Criminal Jury Instructions Committee also chose to select a simpler statement which would be general enough to cover the most common cases, rather than carry all the alternatives in the statute throughout the instruction.

The state, therefore, believed that the jury could find Seymour guilty under sec. 943.20(1)(b) if it was satisfied that Seymour *either* "used," "transferred," *or* "retained possession" of Clower Construction's money. Consequently, the prosecution requested that the pattern jury instruction for theft, Wis. J I—Criminal 1444, be modified to include "transferred" and "retained possession" and to read as follows:

> The first element requires that the defendant had possession of the money of another because of his employment.
>
> The second element requires that the defendant intentionally used, transferred, concealed *or* retained possession of such money without the owner's consent and contrary to the defendant's authority. . . .
>
> The third element requires that the defendant knew that such use, transfer, concealment *or* retention of the money was without the owner's consent and contrary to the defendant's authority.
>
> The fourth element requires that the defendant used, transferred, concealed, *or* retained possession of the money with intent to convert it to his own use.
> . . .
> If you are satisfied beyond a reasonable doubt from the evidence in this case that the defendant, by virtue of his employment, had possession of money belonging to another, that the defendant intentionally used, transferred, concealed, *or* retained possession of such money without the owner's consent, contrary to his authority, and with intent to convert it to his own use, you should find the defendant guilty as to the count under consideration.

(Emphasis added.)[6]

_____

[6] The actual pattern jury instruction, Wis. J I—Criminal 1444, reads:

690

## 1444 THEFT BY EMPLOYE, TRUSTEE, OR BAILEE (EMBEZZLEMENT)—SEC. 943.20(1)(B)

Theft, as defined in sec. 943.20(1)(b) of the Criminal Code of Wisconsin, is committed by one who, by virtue of his employment, has possession of money belonging to another and intentionally uses such money without the owner's consent, contrary to his authority, and with intent to convert it to his own use.

Before you may find the defendant guilty of this offense, the State must prove by evidence which satisfies you beyond a reasonable doubt that the following four elements were present.

The first element requires that the defendant had possession of money of another because of his employment.

The second element requires that the defendant intentionally used such money without the owner's consent and contrary to the defendant's authority. 'Intentionally' means that the defendant must have had a purpose to use such money without the owner's consent. The phrase 'without the owner's consent' means that there was no consent in fact by the owner of such property (or by his authorized agent) to its use.

The third element requires that the defendant knew that such use of the money was without the owner's consent and contrary to the defendant's authority.

The fourth element requires that the defendant used the money with intent to convert it to his own use. As used here, the phrase 'intent to convert to his own use' means that the defendant must have had the mental purpose to use, appropriate, or convert such property to his own personal use.

If you are satisfied beyond a reasonable doubt that the defendant, by virtue of his employment, had possession of money belonging to another, that the defendant intentionally used such money without the owner's consent, contrary to his authority, and with intent to convert it to his own use, you should find the defendant guilty.

If you are not so satisfied, you must find the defendant not guilty.

(Footnotes omitted.) As was noted by the court of appeals, the instruction which was actually given at trial more closely tracked sec. 943.20(1)(b) than the pattern instruction:

(1) ... Whoever does any of the following may be penalized as provided in sub. (3):

...

Though Seymour objected, the modified instruction was given to the jury. The state was also allowed in its closing argument to tell the jury that it need not be unanimous as to the manner in which Seymour violated sec. 943.20(1)(b). Seymour was subsequently convicted of two counts of theft by an employee. On appeal, Seymour argued that the circuit court deprived him of his right to a unanimous verdict under art. I, secs. 5 and 7 of the Wisconsin Constitution and his right under the fourteenth amendment to the United States Constitution to be proved guilty beyond a reasonable doubt. The court of appeals agreed and reversed the convictions, remanding for a new trial.[7]

> (b) By virtue of his office, business or employment, or as trustee or bailee, having possession or custody of money . . . *intentionally uses, transfers, conceals, or retains possession* of such money . . . without the owner's consent, contrary to his authority, and with intent to convert to his own use or to the use of any other person except the owner. . . .

Section 943.20(1)(b), Stats. (emphasis added).

During the instruction conference, the circuit court stated, "I don't think that it would be fatal if for example [the jury was] instructed in regard to use, transfer, *conceal,* or retain." (Emphasis added.) Consequently, the court instructed the jury on all four alternatives. The addition of the word "conceal" occurred at the close of the entire case.

[7] On appeal, Seymour made other claims of trial error upon which the court of appeals did not reach a decision. Those claims included: (a) Seymour was denied due process when the circuit court allowed the state to proceed with its case against him regarding the alternatives of "transferred" and "retained possession" after the state had rested its case, and again when the alternative of "concealed" was added at the close of the entire case; and (b) Seymour should have been permitted by the court to introduce evidence that Clower had framed him.

■

We agree with the court of appeals that the circuit court erred at two stages of the trial proceedings. First, the court *sua sponte* amended the information at the close of trial. The information initially charged Seymour with using, transferring *and* retaining possession of stolen money. However, during the verdict and jury instructions conference, the court noted that the elements in sec. 943.20(1)(b) were listed in the disjunctive, while the information listed the charges in the conjunctive. The court then said:

> I will change the wording on the charges [substituting 'or' for the word 'and'] as far as the Information is concerned to make sure it adheres at this time to the—I am concerned about using the term embezzlement, when the statute clearly defines it as theft.

This change had the effect of making the information duplicitous.[8]

---

[8] Duplicity is "the joining in a single count of two or more distinct and separate offenses." *United States v. Brown,* 521 F. Supp. 511, 524 (W.D. Wis. 1981) (quoting 1 Charles Alan Wright, *Federal Practice and Procedure: Criminal* sec 142 at 306); *see also State v. George,* 69 Wis. 2d 92, 99, 230 N.W.2d 253 (1975) (counts of a complaint are duplicitous if several transactions are joined as a single offense).

This concept is distinct from multiplicity, which is the charging of a single offense in separate counts. *State v. Rabe,* 96 Wis. 2d 48, 61, 291 N.W.2d 809 (1980). "Multiplicitous charging is impermissible because it violates the double jeopardy provision of the Wisconsin and United States Constitutions." *Tappa,* 127 Wis. 2d at 161. This court in *Rabe* articulated a two-part test to evaluate whether a charge is multiplicitous: (1) whether the severed offenses are "identical in the law and in fact" (focusing upon the issue of double jeopardy) and (2) whether there

Though the amendment to the information was not prejudicial, since this change did not occur until after each party presented its case to the jury, the circuit court erred a second time when it subsequently instructed the jury in a disjunctive manner without also requiring that the jury unanimously agree on the manner in which the theft statute was violated. As a consequence, Seymour's constitutional right to a unanimous verdict was compromised. This right is secured under art. I, secs. 5 and 7 of the Wisconsin Constitution,[9] as well as the fourteenth amendment's guarantee that one shall be proved guilty of a crime beyond a reasonable doubt.

---

exists legislative intent as to the allowable unit of prosecution under the statute in question. *Rabe,* 96 Wis. 2d at 63.

[9] Article I, secs. 5 and 7 of the Wisconsin Constitution provide:

> SECTION 5. . . . The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy; but a jury trial may be waived by the parties in all cases in the manner prescribed by law. Provided, however, that the legislature may, from time to time, by statute provide that a valid verdict, in civil cases, may be based on the votes of a specified number of the jury, not less than five-sixths thereof.

> SECTION 7. In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his behalf; and in prosecutions by indictment, or information, to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed; which county or district shall have been previously ascertained by law.

This court in *Holland v. State,* 91 Wis. 2d 134, 138, 280 N.W.2d 288 (1979), held that the constitutional guarantee to a defendant of the right to trial by jury includes the right to a unanimous verdict.

Whether a defendant's right to a unanimous verdict is imperiled when a court fails to instruct jurors that they must unanimously agree on the manner in which sec. 943.20(1)(b) has been violated has been answered in a series of Wisconsin cases. In *Genova,* this court held that sec. 943.20(1)(a), Stats., should be read in the disjunctive and not the conjunctive. *Genova,* 77 Wis. 2d at 145. This holding was based upon an analysis of the legislative intent surrounding the formation of sec. 943.20, which represented a major revision of the Wisconsin Criminal Code. As of 1955, 23 statutes representing the law against misappropriation were coordinated under one section, identified as theft.[10] In particular, the *Genova* court analyzed the

---

[10] Section 943.20, Stats., was intended to include the following 1953 statutes:

| | |
|---|---|
| 343.14 | Larceny; stealing lead pipe |
| 343.15 | Larceny from persons or corpses |
| 343.16 | Looting |
| 343.17 | Larceny; property; values; bailee; gas |
| 343.172 | Larceny of property in nature of realty |
| 343.173 | Stealing birds, dogs or beasts |
| 343.174 | Larceny of domestic animals |
| 343.175 | Fraudulent use of gas, electricity, water, steam |
| 343.20 | Embezzlement |
| 343.24 | False pretenses, personating another |
| 343.253 | Mendicant imposters |
| 343.31 | Gross fraud |
| 343.32 | Sale of land without title |
| 343.341 | Manufacture and distribution of cheating tokens |
| 343.35 | False pretense as to heirship |
| 343.37 | Corporation officers; frauds by |
| 343.405 | Fraud on life insurance company |
| 343.41 | False statements |
| 343.45 | Injury to public property |
| 343.50 | Booming or manufacturing marked log |
| 343.51 | Larceny of logs; evidence; damages; right of search |
| 343.571 | Warehouse receipts, frauds respecting |

language of sec. 943.20(1)(a), Stats. Because the grammatical construction of that section differs little from that of sec. 943.20(1)(b), case law such as *Genova* and the legislative history of the statute provide persuasive guidance.

Both secs. 943.20(1)(a) and (b) should be read in the disjunctive, since each section represents a compilation of various substantive forms of theft. The objective underlying the revisions of the Wisconsin Criminal Code[11] was to

> clarify, codify and condense the myriad of piecemeal statutes that had developed over the years to avoid technical complexities in pleading and to eliminate the useless distinctions between embezzlement, the various kinds of larceny, and common-law theft.

*Genova,* 77 Wis. 2d at 146. *See also* Gordon B. Baldwin, *Criminal Misappropriation in Wisconsin—Part I,* 44 Marq. L. Rev. 253, 256 (1960–61) (The construction of many statutes dealing with misappropriation led to confusion and an overlap regarding the distinctions among major forms of theft. As a result, the law in this area became more uncertain and less predictable.). Embezzlement represented only one of the forms of misappropriation or theft incorporated into the new statute.

In 1979, the court of appeals held that

348.402 Confidence games

*See* Gordon B. Baldwin, *Criminal Misappropriation in Wisconsin—Part I,* 44 Marq. L. Rev. 253, 254 n.2 (1960–61).

[11] Revisions to the Criminal Code were initiated on April 26, 1951, with Senate Bill 784. Completion of those revisions did not occur until 1955 with the passage of ch. 696, Wis. Laws of 1955.

where there are alternative elements of the offense, and the defendant is charged with these alternative elements, the trial court must do one of the following to avoid [the problem of duplicity]. The court may only submit one of these alternative elements to the jury in the instruction based on the State election of which one they wish to submit to the jury. Alternatively, if more than one is submitted to the jury, the court must instruct the jury that before they may find the defendant guilty, they must unanimously agree on the alternative element they find was proven beyond a reasonable doubt.

*Jackson,* 92 Wis. 2d at 11. Again, the focus of the case was sec. 943.20(1)(a). The alternative elements of the offense of theft—taking and carrying away, using, concealing, transferring, and retaining—were submitted to the jury. However, the jury was not instructed that there must be unanimous agreement on the manner in which the statute was violated. As a result, the defendant's right to a unanimous jury verdict was violated.[12]

The *Jackson* court relied on *United States v. Gipson,* 553 F.2d 453 (5th Cir. 1977), wherein the court stated:

Like the 'reasonable doubt' standard, which was found to be an indispensable element in all criminal trials . . ., the unanimous jury requirement 'impresses on the trier of fact the necessity of reaching a subjective state of certitude on the facts in issue.' . . . The unanimity rule thus requires jurors to be in substantial agreement as to just what a defendant did as a step preliminary to determining

---

[12] Under the specific facts of *Jackson,* the court found that the failure to instruct the jury that they must unanimously agree on the element the defendant committed was harmless error. *Id.* at 12.

697

whether the defendant is guilty of the crime charged.

*Gipson,* 553 F.2d at 457–58 (citations omitted) (quoting *In re Winship,* 397 U.S. 358, 364 (1970)).[13]

---

[13] In *Gipson,* the court examined 18 U.S.C. sec. 2313 which provides:

> Whoever receives, conceals, stores, barters, sells or disposes of any motor vehicle or aircraft moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years or both.

The court reasoned that the six prohibited acts within the statute fell into two distinct conceptual groupings, the first consisting of receiving, concealing, and storing, and the second consisting of bartering, selling, and disposing. As a result,

> the two conceptual groupings are sufficiently different so that a jury finding of the actus reus element of the offense would not be 'unanimous' if some of the jurors thought the defendant committed only an act in the first conceptual grouping while others believed he committed an act only in the second.

*Gipson,* 553 F.2d at 458. The state has argued that reliance on *Gipson* is misplaced as a result of the Supreme Court's holding in *Schad v. Arizona,* 111 S. Ct. 2491 (1991). The Court, in a five to four plurality opinion, stated that it was not persuaded by the *Gipson* conceptual grouping approach, and

> [t]he question whether statutory alternatives constitute independent elements of the offense therefore does not . . . call for a mere tautology; rather, it is a substantial question of statutory construction . . . .
>
> If a State's courts have determined that certain statutory alternatives are mere means of committing a single offense, rather than independent elements of the crime, we simply are not at liberty to ignore that determination and conclude that the alternatives are, in fact, independent elements under state law.

*Id.* at 2499 (citations omitted). The Court then articulated a due process test which frames the issue according to "the permissible limits in defining criminal conduct, as reflected in the

Finally, in *Tappa,* 127 Wis. 2d at 157, this court relied on *Genova* for the conclusion that sec. 943.20(1)(a) should be read as five disjunctive acts. "Each of the disjunctive terms describes a separate type of 'theft' or property deprivation." *Tappa,* 127 Wis. 2d at 168. Therefore, an individual may be separately convicted under sec. 943.20(1)(a) for *concealing* the movable property of another as well as *transferring* that property without running the risk of multiplicitous charging. The *Tappa* court concluded that such convictions would not violate the double jeopardy provisions of the Wisconsin and United States Constitutions because sec. 943.20(1)(a) " 'describes a series of acts made criminal thereunder, one or more of which, but not all of which, constituted theft under common law. The statute covers more than "stealing from the owner" as the legislative history clearly shows.' " *Tappa,* 127 Wis. 2d at 166 (quoting *Genova,* 77 Wis. 2d at 145–46).

In *Manson v. State,* 101 Wis. 2d 413, 304 N.W.2d 729 (1981), this court examined sec. 943.32(1), Stats. (1977), in order to assess whether the statute defined

instructions to jurors applying the definitions," as opposed to juror unanimity. *Id.* at 2496.

We agree with the court of appeals' rejection of the state's argument that *Schad* should be controlling here. In this state, both the legislative history *and* the courts have concluded that the alternatives articulated in sec. 943.20(1)(a)—use, transfer, conceal or retain possession—are independent offenses. There is nothing to suggest that applying the same reasoning to sec. 943.20(1)(b) would represent a "freakish definition" of the elements of the crime of theft. *See Schad,* 111 S. Ct. at 2501. Nor did the Supreme Court in *Schad* replace the jury-unanimity requirement with the plurality's due process test.

two offenses,[14] thereby requiring jury unanimity on the manner in which the statute was violated. Identifying legislative intent as critical in this analysis, the court articulated the following factors as relevant to the determination of that intent: (1) the language of the statute; (2) the legislative history and context of the statute; (3) the nature of the proscribed conduct; and (4) the appropriateness of multiple punishment for the conduct. *Id.* at 422.

Though we concluded that one offense was intended under sec. 943.32(1), the same conclusion cannot be drawn in this case. First, secs. 943.20(1)(a)

---

[14] In *Manson,* the defendant claimed that the trial court's instruction on armed robbery deprived him of a unanimous verdict, since the statute defined two separate and distinct crimes. *Id.* at 420.

Section 943.32, Stats. (1977), provided:

**943.32 Robbery. (1)** Whoever, with intent to steal, takes property from the person or presence of the owner by either of the following means is guilty of a Class C felony:

(a) By using force against the person of the owner with intent thereby to overcome his physical resistance or physical power of resistance to the taking or carrying away of the property; or

(b) By threatening the imminent use of force against the person of the owner or of another who is present with intent thereby to compel the owner to acquiesce in the taking or carrying away of the property.

**(2)** Whoever violates sub. (1) while armed with a dangerous weapon is guilty of a Class B felony.

**(3)** In this section 'owner' means a person in possession of property whether his possession is lawful or unlawful.

Two conclusions were reached in the *Manson* case: (1) a common sense reading of the statute, fair to the offender and society, is that one offense was intended; and (b) the use of force and the threat of imminent use of force were sufficiently similar to comprise a single element of the offense of armed robbery. *Manson,* 101 Wis. 2d at 428–30.

700

and (b) were enacted simultaneously as part of the revision of the Wisconsin Criminal Code. *See* ch. 696, Wis. Laws of 1955. Both of these sections contain virtually identical language and no statutory instructions to read the terms in sub. (1)(a) differently than the identical terms in sub. (1)(b).

Second, the legislative history does not mandate that the terms in sub. (1)(b) ought to be read differently than those in sub. (1)(a). *See* Assembly Bill 814,A (ch. 696, Wis. Laws of 1955). Further, using the *Manson* reasoning as a guide, this court in *Tappa* concluded that the nature of the proscribed conduct of "transferring" and "concealing" represented significantly different acts:

> *Concealing* only requires the actual hiding of the property, whereas *transferring* requires the involvement of a third-party and a change in the possession of such property. A transfer involves a separate volitional act. It is not incidental to the concealment. It involves seeking out a third-party and arranging the terms of the transfer.

*Tappa,* 127 Wis. 2d at 169 (emphasis added).

A clear distinction between the nature of proscribed acts was impossible to draw in *State v. Lomagro,* 113 Wis. 2d 582, 335 N.W.2d 583 (1983). The issue in *Lomagro* was whether the defendant's right to a unanimous verdict was violated when he was charged with one count of first-degree sexual assault, but evidence was introduced of six different acts of nonconsensual sexual intercourse. *Id.* at 586. The following rule was adopted:

> When separate criminal offenses of the same type occur during one continuous criminal transaction, the prosecutor may join these acts in a single count

701

> if they can properly be viewed as one continuous occurrence without violating the protections afforded the defendant by the rule against duplicity.

*Id.* at 589. Consequently, this court concluded that the acts of sexual assault alleged in the complaint were committed during a short period of time and, as such, were part of one continuous criminal transaction. *Id.* Unlike acts of sexual assault described in *Lomagro,* the proscribed conduct under sec. 943.20(1)(b)—using, transferring, concealing or retaining possession of the property of another—can be distinguished according to their individual nature, as well as the time frame in which each may be committed. *See Tappa,* 127 Wis. 2d at 169.

Third, the legislative intent has been supported by additional writings of those intimately involved in the design and drafting of the legislation. *See* Marygold Shire Melli and Frank J. Remington, *Theft—A Comparative Analysis of the Present Law and the Proposed Criminal Code,* 1954 Wis. L. Rev. 253, 267 (one of the most frequently suggested reforms in the criminal law is the consolidation of the theft offenses into one section). The jury instructions for sec. 943.20(1)(b) also serve as persuasive authority,[15] since two of the members of the Criminal Jury Instructions Committee also served on the Criminal Code Advisory Committee which drafted the legislation. Wis. J I—Criminal 1444 corroborates the conclusion that sec. 943.20(1)(b) is comprised of distinct offenses.

---

[15] *See State v. Olson,* 175 Wis. 2d 628, 642 n.10, 498 N.W.2d 661 (1993) (while jury instructions are not precedential, they are persuasive).

Both the legislative history and case law surrounding the drafting and development of sec. 943.20, Stats., require an affirmance of the decision of the court of appeals. Seymour must be given a new trial at which the jury will be properly instructed.

*By the Court.*—The decision of the court of appeals is affirmed.

SHIRLEY S. ABRAHAMSON, J. *(concurring).* I agree that the decision of the court of appeals should be affirmed. In my opinion, this decision is inconsistent with *State v. Lomagro,* 113 Wis. 2d 582, 335 N.W.2d 583 (1983). In *Lomagro* no unanimity instruction was required when the defendant was charged with a single count of sexual assault and evidence of six separate acts was presented.

Furthermore, as I urged in my concurrence in *Manson v. State,* 101 Wis. 2d 413, 432, 304 N.W.2d 729 (1981), this court should reconsider its reliance on *United States v. Gipson,* 553 F.2d 453 (5th Cir. 1977). In *Manson,* I wrote that "*Gipson* does not offer a firm, fixed rule for . . . determining which statutorily prohibited acts or . . . ways of committing a single offense are sufficiently synonymous or analogous not to require a unanimity instruction and . . . which . . . are sufficiently conceptually distinct and different to require a unanimity instruction." *Manson,* 101 Wis. 2d at 438 (Abrahamson, J. concurring).