STATE of Wisconsin, Plaintiff-Respondent,

v.

Michael G. DONNER, Defendant-Appellant.†

Court of Appeals

*No. 94–0339–CR. Submitted on briefs June 15, 1994.—Decided March 1, 1995.*

(Also reported in 531 N.W.2d 369.)

†Petition to review denied.

306

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Robert J. Vander Loop* of *Vander Loop Law Office* of Oshkosh.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *John A. Jorgensen*, assistant district attorney.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

NETTESHEIM, J. Michael G. Donner appeals from a judgment of conviction for operating a motor vehicle while under the influence of an intoxicant pursuant to § 346.63(1)(a), STATS.[1] On appeal, Donner

---

[1] Donner was charged in a single count complaint with a violation of § 346.63(1)(a), STATS. This statute prohibits the

raises four issues: (1) evidence of his refusal to submit to a blood test was improperly received into evidence, (2) the State improperly commented on his refusal to submit to the blood test, (3) an expert witness for the State was not qualified to give an opinion that all persons with a .09% blood alcohol concentration (BAC)[2] are physically impaired to some degree, and (4) a police officer improperly testified that he detected the odor of marijuana when he stopped Donner.

We reject all of Donner's arguments and affirm the judgment of conviction.

## FACTS AND TRIAL COURT PROCEEDINGS

The facts germane to the appellate issues are not disputed. On June 21, 1993, at approximately 2:00 a.m., City of Oshkosh police officer Steve Kaiser

---

operation of a motor vehicle in three situations: (1) while under the influence of an intoxicant, (2) while under the influence of a controlled substance, and (3) while under the influence of a combination of an intoxicant and a controlled substance.

Here, the complaint charged in a single count *all three* situations of operating while under the influence. Tracking the complaint, the verdict inquired in a single question whether Donner was guilty or not guilty of operating a motor vehicle while under the influence of an intoxicant or a controlled substance or both. Donner never contended that the complaint was duplicitous by joining two or more distinct and separate offenses in a single count. *See State v. Seymour*, 183 Wis. 2d 683, 693 n.8, 515 N.W.2d 874, 879 (1994). However, the judgment of conviction recites a conviction for only operating while intoxicated.

[2] In the trial court, the parties sometimes represented that Donner's BAC reading was .08%; at other times, they represented that it was .09%. This confusion persists in the parties' briefs on appeal. We use the .09% figure because that was the testimony of the officer who administered the test.

noticed a motor vehicle straddling the center line of the roadway as it traveled north on South Main Street. Kaiser stopped the vehicle and detected the odor of intoxicants coming from inside the vehicle.

Kaiser established that Donner was the driver of the vehicle. While Donner was performing field sobriety tests and answering further questions, Kaiser detected the odor of marijuana on Donner's breath. Kaiser then had Donner blow towards his face. Again the officer detected the odor of marijuana. After Donner was placed in Kaiser's squad car, the officer again smelled the odor of marijuana.

Kaiser transported Donner to the city police department. There, Kaiser read to Donner an informing the accused form pursuant to the implied consent law, § 343.305, STATS. Donner submitted to an intoxilyzer test which produced a BAC reading of .09%. Kaiser then asked Donner to submit to a blood test. Donner refused. Despite Donner's refusal to submit to the blood test, the State did not pursue a revocation hearing pursuant to the implied consent law.[3]

Prior to the commencement of the jury trial, Donner brought a motion in limine asking the trial court to preclude evidence of his refusal to submit to the blood test. In support, Donner argued that he had in fact complied with the implied consent law because he had submitted to the intoxilyzer test. The court rejected Donner's motion in limine, observing that § 343.305(3)(a), STATS., authorizes a law enforcement

---

[3] The State explained that it did not pursue the implied consent revocation hearing against Donner because the necessary paper work was not completed. However, Kaiser also testified that he was not certain whether Donner had refused the test within the meaning of the implied consent law because he had submitted to the intoxilyzer test.

officer to request one or more samples of a suspect's breath, blood or urine. In accord with the trial court's ruling, Kaiser was permitted to testify before the jury that Donner had refused the blood test, and the prosecutor was permitted to comment on that refusal during the closing argument.

In addition, the trial court permitted Kaiser to testify that he smelled the odor of marijuana emanating from Donner. The court also permitted the State's expert on alcohol metabolism to testify that persons with a BAC of .09% are impaired to some extent.

## REFUSAL TO SUBMIT TO THE BLOOD TEST

The trial court permitted Kaiser to testify that Donner refused to submit to the blood test. As a consequence, the State was permitted to argue this fact to the jury. Donner argues that the court's evidentiary ruling and the ensuing argument were reversible error. We address both of these issues in a single discussion.

Ordinarily, a trial court's decision to admit or exclude evidence is a discretionary determination. We will not upset the ruling on appeal if the court had a reasonable basis for the ruling and if it was made in accordance with accepted legal standards and in accordance with the facts of record. *State v. Johnson*, 181 Wis. 2d 470, 484, 510 N.W.2d 811, 815 (Ct. App. 1993). Here, however, the fundamental question is whether the trial court admitted the evidence of Donner's refusal in accord with the implied consent law. Thus, the inquiry is whether the court properly construed and applied the implied consent law to the facts of this case. This presents a question of law which we review independently of the trial court's ruling. *See Chang v.*

*State Farm Mut. Auto. Ins. Co.*, 182 Wis. 2d 549, 560, 514 N.W.2d 399, 403 (1994).

In the trial court, Donner argued, inter alia, that he was not obligated to submit to a blood test because he had already submitted to the intoxilyzer test.[4] However, as the trial court correctly noted, § 343.305(3)(a), STATS., expressly permits the law enforcement officer to request *"one or more* samples of [the suspect's] *breath, blood or urine."* (Emphasis added.) In addition, the statute states, "Compliance with a request for one type of sample does not bar a subsequent request for a different type of sample." *Id.* Moreover, § 343.305(2) provides that "[a]ny person who . . . operates a motor vehicle upon the public highways of this state . . . is deemed to have given consent to *one or more* tests of his or her breath, blood or urine." (Emphasis added.)

We therefore conclude that the implied consent law permitted Kaiser to request Donner to submit to a further test.

Donner next argues that the State's failure to pursue a revocation hearing pursuant to the implied consent law barred the State from using the refusal evidence in this case. Again, we disagree. This court stated in *State v. Algaier*, 165 Wis. 2d 515, 478 N.W.2d 292 (Ct. App. 1991):

> In *State v. Bolstad*, 124 Wis. 2d 576, 370 N.W.2d 257 (1985), the supreme court held that evidence of a refusal to submit to a chemical test was admissible in an OAWI trial. The court ruled "[t]hat refusal evidence is relevant, because it makes more probable the crucial fact of intoxica-

---

[4] Donner does not expressly renew this issue on appeal. We address it nonetheless since the general issue before us is the application of the implied consent law to the facts.

tion, because . . . [a] reasonable inference from refusal to take a mandatory [blood alcohol] test is consciousness of guilt."

*Algaier*, 165 Wis. 2d at 518, 478 N.W.2d at 293 (quoted source omitted).

However, in *State v. Zielke*, 137 Wis. 2d 39, 403 N.W.2d 427 (1987), the supreme court cautioned that:

> The same due process considerations operating in *Crandall* lead this court to conclude that the fact of refusal cannot be used in a subsequent trial involving operating a motor vehicle while intoxicated if the defendant has not been duly advised under [the implied consent law] . . . . Thus, to obtain the benefit of using refusal evidence in the criminal prosecution for the substantive offense involving intoxicated use of a vehicle, police must provide the warnings set forth in sec. 343.305.

*Zielke*, 137 Wis. 2d at 50-51, 403 N.W.2d at 432.

Here, the State admittedly did not pursue a formal revocation hearing under the implied consent law. However, the evidence establishes that Kaiser advised Donner of the implied consent law using an informing the accused form. Donner raises no appellate claim that he was not properly advised under the implied consent law.

■

The crux of the supreme court's due process ruling in *Zielke* is that a suspect must be properly informed under the implied consent law before evidence of a refusal may be admitted at the subsequent trial. *Zielke*, however, does not hold that the inquiry must necessarily be conducted *within the context of a formal revocation hearing under the implied consent law*.

313

■

Here, the question of whether Donner was properly informed under the implied consent law was explored both at the motion in limine hearing and during the trial. Thus, Donner received the equivalent of an implied consent hearing within the context of the pretrial and trial proceedings. As such, Donner was accorded the protections guaranteed by *Zielke* before evidence of his refusal was used against him.[5] Therefore, pursuant to *Bolstad*, the trial court properly admitted evidence of Donner's refusal.[6]

---

[5] The procedure in this case afforded Donner not only the protections of an implied consent hearing, but also shielded him from the perils of such a proceeding, to wit, revocation of his operating privileges. *See* § 343.305(10), STATS.

[6] Donner raises two collateral issues. First, Donner appears to argue that because the intoxilyzer breath test detects only evidence of intoxicants, it was unfair for the trial court to permit evidence of his refusal regarding the blood test which detects for evidence of both intoxicants and controlled substances. We are not entirely clear as to the basis for this argument. We think that Donner is contending that Kaiser was obligated to ask for the blood test first. If that is the argument, we see nothing in the implied consent law which obligates the officer in an "overlap" situation such as this to select an initial test which might detect both suspected conditions. If that is not Donner's argument, we do not know what it is.

Second, Donner contends that Kaiser did not have a reasonable suspicion within the meaning of *State v. Seibel*, 163 Wis. 2d 164, 179, 471 N.W.2d 226, 233, *cert. denied*, 502 U.S. 986 (1991), to request a blood test. After citing *Seibel*, Donner's argument on this point is limited to one general sentence. We may decline to review issues inadequately briefed. *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633, 642 (Ct. App. 1992). We deem the issue inadequately briefed.

## EXPERT TESTIMONY ON IMPAIRMENT

Donner argues that the trial court improperly qualified Mary MacMurray, a chemist employed by the Wisconsin Department of Transportation (DOT), as an expert witness in the field of alcohol metabolism. Alternatively, Donner argues that even if properly qualified, MacMurray went beyond the bounds of her expertise when giving her opinion. MacMurray testified that all persons are physically impaired to some extent at a BAC level of .09%.[7]

Donner begins his discussion of this issue with an analysis of the United States Supreme Court's recent decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. —, 113 S. Ct. 2786 (1993). Prior to *Daubert*, the rule for admissibility of scientific evidence in the federal courts was the so-called "general acceptance" test set out in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). This test required that the proffered scientific evidence must "have gained general acceptance in the particular field in which it belongs." *Daubert*, 509 U.S. at —, 113 S. Ct. at 2793 (quoting *Frye*, 293 F. at 1014).

In *Daubert*, the Court held that "the *Frye* test was superseded by the adoption of the Federal Rules of Evidence." *Daubert*, 509 U.S. at —, 113 S. Ct. at 2793. Thus, the Court held that Rule 702 of the Federal Rules

---

[7]Since Donner's BAC reading was below the statutorily prohibited level, the State did not charge Donner with operating a motor vehicle with a prohibited blood alcohol concentration pursuant to § 346.63(1)(b), STATS. Instead, the State charged the more "generic" offense of operating while under the influence of an intoxicant or controlled substance pursuant to subsec. (1)(a) of the statute. MacMurray's "impairment" testimony was presented in support of the State's claim that Donner was under the influence within the meaning of this subsection.

governing scientific evidence did not include the *Frye* threshold requirement for "general acceptance." *Daubert*, 509 U.S. at—, 113 S. Ct. at 2794. Instead, the Court held that Rule 702 required only that such evidence must: (1) be scientific knowledge, and (2) assist the trier of fact to understand or determine a fact in issue. *Daubert*, 509 U.S. at—, 113 S. Ct. at 2795-96. To assure that this more relaxed standard is not abused, *Daubert* envisions a more active role for the trial court in preliminarily assessing the witness and the evidence. *See id.* at —, 113 S. Ct. at 2796-98; *see also* Daniel Blinka, *Scientific Evidence in Wisconsin After Daubert*, WIS. LAW., Nov. 1993, at 10, 12-13. Donner urges that we adopt *Daubert*.

■

However, before *Daubert*, the *Frye* test was not the law in Wisconsin. *See State v. Walstad*, 119 Wis. 2d 483, 518-19, 351 N.W.2d 469, 486-87 (1984). To that extent, Wisconsin law and *Daubert* coincide. Blinka, *supra*, at 12. Beyond that, Wisconsin law holds that "[a]ny relevant conclusions which are supported by a qualified witness should be received unless there are other reasons for exclusion." *Walstad*, 119 Wis. 2d at 518, 351 N.W.2d at 487 (quoted source omitted). Stated otherwise, expert testimony is admissible in Wisconsin if relevant and will be excluded only if the testimony is superfluous or a waste of time. *Id.* at 516, 351 N.W.2d at 486.

■

Assuming that *Daubert* in its application represents something beyond *Walstad*, we observe that we are principally an error-correcting court and we are bound to follow our supreme court case law. *See State v. McMahon*, 186 Wis. 2d 68, 92, 519 N.W.2d 621, 631 (Ct. App. 1994). *Walstad* is the Wisconsin law on this point.

Therefore, we address Donner's appellate issue under *Walstad* and related cases.

The question of an expert witness's qualifications is a matter resting in the sound discretion of the circuit court, and unless it is shown that the court misused its discretion, its ruling will stand. *State v. Robinson,* 146 Wis. 2d 315, 332, 431 N.W.2d 165, 171 (1988). If the witness is qualified, *Walstad* next requires that the evidence itself be relevant. *Walstad,* 119 Wis. 2d at 516-19, 351 N.W.2d at 485-87. Relevancy is satisfied if the evidence assists the trier of fact in understanding the evidence or a fact in issue. *See* § 904.01, STATS.; *see also State v. Pittman,* 174 Wis. 2d 255, 267, 496 N.W.2d 74, 79, *cert. denied,* 510 U.S. —, 114 S. Ct. 137 (1993).

The State presented MacMurray as an expert witness in the area of alcohol metabolism. After the trial court ruled that she qualified as an expert witness, she was permitted to testify that all persons are impaired to a varying degree at a BAC level of .09%.

We first summarize MacMurray's training and experience. At the time of her testimony, she had been employed as a chemist with the DOT for seven and one-half years. In addition to her undergraduate training, MacMurray had received extensive training and education in the area of BAC testing, particularly as it related to impairment studies. She had previously testified as an expert witness regarding alcohol metabolism.

Most importantly, MacMurray had conducted and participated in "dosing" experiments in which alcohol-free persons ingest volumes of alcohol and the degree of their resulting impairment is then noted. MacMurray performs these experiments in her role as an instructor of standardized field sobriety tests for the DOT.

Based on this evidence, the trial court determined that MacMurray was properly qualified as an expert witness and permitted her to opine that persons with a BAC of .09% are impaired to some degree. We uphold the court's ruling. MacMurray's substantial experience in the area of alcohol metabolism together with her "dosing" experiments offered the court a solid basis upon which to recognize MacMurray as an expert and to allow her "impairment" opinion.[8]

Donner contends, however, that MacMurray's testimony ran afoul of *State v. Bailey*, 54 Wis. 2d 679, 196 N.W.2d 664 (1972). There, the supreme court held that a chemist was properly barred from testifying as to the effect of a .23% BAC. The supreme court held that the question was beyond the range of the chemist's expertise because the chemist "acknowledged that he had never observed the donors of blood from whom the blood alcohol samples were taken." *Id.* at 684-85, 196 N.W.2d at 667.

Here, there is no such void in MacMurray's experience. Unlike the chemist in *Bailey*, MacMurray testified to her substantial experience and observations regarding persons who had participated in the "dosing" experiments. We see *Bailey* as supporting, rather than damaging, the trial court's ruling in this case.

We also see *Robinson* as on point. There, a worker from a rape crisis center was properly qualified as an expert witness. *Robinson*, 146 Wis. 2d at 333, 431 N.W.2d at 171. Based on that experience, the witness was permitted to testify regarding the emotional reac-

---

[8] The criticisms which Donner levels at MacMurray's testimony (that is, her experiments were not . published nor subjected to peer review) go to the weight and credibility of her testimony—not its threshold admissibility.

tions of sexual assault victims generally. *Id.* at 333, 431 N.W.2d at 172. However, the witness did not offer any specific inferences or opinions about the complainant. *Id.* The supreme court held that the testimony was properly admitted in light of the defendant's suggestion to the jury that the victim, when reporting the assault, had acted in a manner inconsistent with a recent sexual assault. *Id.* at 335, 431 N.W.2d at 172.[9]

Here, MacMurray's opinion testimony was generic as to all persons. It was not specific as to Donner. In addition, MacMurray acknowledged that the degree of impairment might vary with a person's drinking experience. We conclude that the trial court properly exercised its discretion when admitting MacMurray's expert opinion testimony.

## EVIDENCE OF THE ODOR OF MARIJUANA

The trial court permitted Kaiser to testify that he detected the odor of marijuana on Donner's breath. Donner contends that this was error because he had been smoking cigars shortly before he encountered the

[9] It is not clear from the *Robinson* decision whether the disputed evidence was admitted as part of the State's case-in-chief or as rebuttal evidence. Here, although MacMurray's evidence was part of the State's case-in-chief, it was offered, at least in part, as a response to Donner's contention that he was not intoxicated—a matter already suggested by his prior cross-examination of Kaiser. MacMurray's testimony was also responsive to Donner's opening statement to the jury which stressed that his BAC did not satisfy the statutory level for intoxication.

officer.[10] Donner reasons that Kaiser mistook the odor of cigar smoke for that of marijuana. Thus, he concludes that the jury was permitted to base its guilty verdict "on an incredibly uncertain inference."

We construe Donner's appellate argument to raise two issues: (1) the trial court erred by admitting the evidence; and (2) if properly admitted, the evidence was insufficient to sustain the conviction.

■

We do not address this issue on the merits. As we observed in the opening footnote, § 346.63(1)(a), STATS., creates three instances of illegal operation while under the influence: (1) under the influence of an intoxicant, (2) under the influence of a controlled substance, and (3) under the influence of a combination of both an intoxicant and a controlled substance. Here, the State charged Donner in a one-count complaint with the three discrete offenses contemplated by § 346.63(1)(a). The verdict echoed this charge in a single question. Donner never raised any objection that the complaint was potentially duplicitous because it joined two or more distinct offenses in a single count. *See State v. Seymour*, 183 Wis. 2d 683, 693 n.8, 515 N.W.2d 874, 879 (1994).

■

However, the judgment of conviction recites a conviction *only for Donner's operation of a motor vehicle while intoxicated*. Donner raises no argument regarding the sufficiency of the evidence to support the conviction recited in the judgment—operating while under the influence of an intoxicant. Nor does Donner argue that the admission of evidence pertaining to the

---

[10] Actually, the evidence does not directly show that Donner had been smoking cigars. Rather, the evidence shows that Donner told Kaiser he had been smoking cigars.

odor of marijuana taints the evidence supporting the conviction for operating while intoxicated. Thus, even if we assume that the admission of Kaiser's testimony was error, or if we alternatively assume that the evidence would not support a conviction for operating while under the influence of a controlled substance, the error does not affect the offense for which Donner stands convicted.

*By the Court.*—Judgment affirmed.